In the Matter of Christie Ann CRAIG,
a/k/a Christie Ann Evans, Debtor.

Christie Ann CRAIG, a/k/a Christie
Ann Evans, Plaintiff,

v.

**PENNSYLVANIA HIGHER EDU-
CATION ASSISTANCE
AGENCY, Defendant.**

Bankruptcy No. 79–597.
Adv. No. 85–41.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 14, 1986.

Jane P. Malatesta, Killian & Gephart, Harrisburg, Pa., for Pennsylvania Higher Education Assistance Agency.

Edward R. Schellhammer, Southern Alleghenys Legal Aid, Inc., Johnstown, Pa., for debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before this Court is a Complaint by Christie Ann Craig, a/k/a Christie Ann Evans (hereinafter "Debtor") to determine the dischargeability of her debt to the Pennsylvania Higher Education Assistance Agency (hereinafter "PHEAA"). The Debtor raises several alternative issues which she asserts support her Complaint:

(1) The applicable law on the question of dischargeability, 20 U.S.C. § 1087–3, does not include PHEAA in its provisions;

(2) The reopening of the Debtor's case occurred more than five years after the date for commencement of repayment of this loan, automatically discharging said loan; or,

(3) The repayment of this loan would constitute "undue hardship, requiring the Court to discharge this debt.

Based upon the pleadings, hearing, and briefs submitted on the issues, the Court finds that the debt owed to PHEAA is not dischargeable.

## FACTS

The Debtor filed her Chapter 7 petition on August 2, 1979, under the former Bankruptcy Act, and was subsequently discharged of her scheduled debts on October 10, 1979. On November 30, 1984, the Debtor filed a Motion To Reopen her case in order to amend her Schedules of Creditors to include PHEAA. After making this amendment, the Debtor brought this action to discharge the debt owed to PHEAA.

The Debtor had taken a series of educational loans from the United States National Bank Of Johnstown, Pennsylvania. These loans covered a period of five years and totaled $5,100.00. These loans were guaranteed to the Bank by PHEAA. Repayment was to begin on January 15, 1976.

The Debtor repaid $1,506.79, through December 1978, before defaulting on the remainder. On May 14, 1979, PHEAA applied for and received federal insurance to cover the outstanding balance.

At the time of default, the Debtor was in the process of obtaining a divorce, and she and her infant son were receiving public assistance. During eight months of 1979, the Debtor was employed in a program sponsored by the Comprehensive Employment Training Act (hereinafter "CETA") in Johnstown, Pennsylvania. The Debtor possesses a Bachelor of Arts Degree from the University Of Pittsburgh at Johnstown in April of 1974, and obtained additional undergraduate credits through April of 1975.

## ANALYSIS

We first address the question of PHEAA's inclusion in 20 U.S.C. § 1087–3 which states:

§ 1087–3 *Five-year nondischargeability of certain loan debts; effective date*

(a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that

payment from future income or other wealth will impose an undue hardship on the debtor or his dependents;

(b) Subsection (a) of this section shall be effective with respect to any proceedings begun under the Bankruptcy Act on or after September 30, 1977.

In order for PHEAA to fall within the parameters of this section, it must be an "eligible lender", insurable by the federal program. 20 U.S.C. § 1085(g)(1)(D) states in pertinent part:

[t]he term "eligible lender" means—

(D) in any State, a single agency of the State or a single, nonprofit private agency designated by the State; . . .

This Court finds that PHEAA meets the criteria to be an "eligible lender" and is therefore included in the dischargeability provision of § 1087–3.

We next address the issue of the reopening of the case as it relates to the five-year time period triggering automatic dischargeability. The Debtor asserts that since the bankruptcy petition was reopened more than five years after the commencement of the repayment period, the debt should be discharged under § 1087–3. "The effect of reopening a case is to put the bankruptcy estates back into the process of administration . . . The original bankruptcy is revived including all the procedural and substantive rights of the debtor." *In re Cassell,* 41 B.R. 737, 740 (Bkrtcy.E.D.Va.1984).

■ Clearly, the reopening of the case does not change the date of the filing of the petition. Further, the amendment of a schedule to include a creditor operates to list that creditor as of the original filing date. Necessarily then, the discharge which was granted on October 10, 1979, is the operative discharge to which § 1087–3 refers. That discharge occurred only three (3) years and ten (10) months after the commencement of the loan period. As the five-year period had not run as of the granting of the discharge, the Debtor's argument as to automatic dischargeability must fail.

Finally, we address the issue of "undue hardship". The most thorough analysis of this aspect of the dischargeability of student loans is found in *In re Johnson,* 5 B.C.D. 532 (E.D.Pa.1979). In that case, the court devised three tests for "undue hardship"—the "mechanical" test, the "good faith" test, and the "policy" test.

■ In implementing the "mechanical test", the *Johnson* court suggested a checklist of items to be considered in determining whether the repayment of the student loan would cause the debtor to suffer "undue hardship". We believe those items can be consolidated as follows:

1) the Debtor's rate of pay;
2) the Debtor's skills;
3) the Debtor's ability to obtain and retain employment;
4) the Debtor's level of education;
5) the Debtor's health; and
6) the Debtor's expenses.

In applying this test we find that as of the time the bankruptcy petition was filed, the Debtor was receiving public assistance, and it is acknowledged by this Court that this money allows only for subsistence living. However, also at the time of filing this petition, the Debtor possessed a Bachelor of Arts Degree from a major university and had received vocational training under the CETA program.

The Debtor has not claimed any physical impairments to obtaining employment, and has been discharged of most, if not all, of her debts. Her only remaining expenses should be food, shelter, and clothing.

■ In analyzing whether the repayment of this loan will cause "undue hardship", the Court recognizes that these educational loans are generally repaid over a long term—usually ten years. Therefore, it is this Court's opinion that in order to discharge an educational loan, the Debtor must not only prove that repayment would be a great burden at the time of bankruptcy, but must also show that her circumstances, such as they were, could not foreseeably change for the better over the next

ten years. An example of this would be, if the Debtor had suffered a severe injury, leaving her physically incapacitated for an indefinite period, or if she had not completed her undergraduate degree (both of which were conditions suffered by the Debtor in *Johnson*). Given those facts, this Court would have considered the repayment an "undue hardship".

However, it appears that the Debtor's obstacles in 1979 could not be expected to continue indefinitely. Her son would grow and attend school—well within the ten-year scheme. This would permit the Debtor to obtain full-time employment without incurring the additional expense of daycare services for her son. Additionally, the Debtor's college education and vocational training make her marketable so as to reasonably expect that she could begin to repay this debt within the ten year period.

Further, it is recognized that PHEAA has offered to accept monthly payments of $45.00 until the Debtor is financially able to pay higher monthly installments. The Debtor is presently employed, and while we do not consider her present circumstances or income for the determination of "undue hardship" in 1979, we must acknowledge that this is an indication of how circumstances ten years after the fact can be so significantly improved.

■ "Undue hardship" is not merely severe financial difficulty. It is presumed that all Debtors who file bankruptcy petitions are in severe financial difficulties. To prove "undue hardship", one must be suffering from truly severe, and even uniquely difficult circumstances.

As stated in *Johnson*, to meet the standard in the "mechanical" test, the court must answer the following question affirmatively:

> Will the Debtor's future financial resources *for the longest foreseeable period of time allowed for repayment of the loan*, be sufficient to support the Debtor and her dependent at a subsistence or poverty standard of living, as well as to fund repayment of the student loan?

*See Johnson, supra* at 544 (Emphasis added).

■ In this Court's opinion, the Debtor has not been able to prove "undue hardship" under this "mechanical" test. As the Court stated in *Johnson, supra,* if the "mechanical" test does not prove "undue hardship", the Court need not examine the "good faith" and "policy" tests.

Therefore, this Court finds that the Debtor's educational loan is not dischargeable pursuant to 20 U.S.C. § 1087–3.