**In re Raymond L. WOODCOCK, Debtor.**

**Raymond L. WOODCOCK, Plaintiff,**

**v.**

**CHEMICAL BANK, NYSHESC as Servicing Agent for Chemical Bank, Columbia University, University Accounting Service as Servicing Agent for Columbia University, and Attorney General, Defendants.**

**Bankruptcy No. 92–14916 DEC.**
**Adv. No. 92–1924 PAC.**

United States Bankruptcy Court,
D. Colorado.

Jan. 22, 1993.

Raymond L. Woodcock, pro se.

Dolores B. Kopel, Denver, CO, for defendants.

### CORRECTED ORDER

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court on the complaint filed by Raymond Woodcock, the debtor, to discharge several of his student loans under 11 U.S.C. § 523(a)(8). The subject loans were guaranteed by New York State Higher Education Services Corporation (NYSHESC). Mr. Woodcock contends that the loans first became due more than seven years before he filed his bankruptcy petition or in the alternative, if the debt is not discharged, it will impose an undue hardship on him.

The essential facts are as follows. The debtor obtained $20,000 in student loans from Chemical Bank to attend law school at Columbia University. The loans were

guaranteed by NYSHESC. There were four loans of $5,000 each evidenced by four promissory notes executed on September 24, 1979, May 21, 1980, June 16, 1981 and April 7, 1982.

Each note contains a provision under Article III which states in relevant part:

**Beginning of Repayment Period (Maturity):**

I will begin to repay this loan on the date any one of these events occurs:

(1) the end of the ninth month following the month in which I cease to be matriculated, withdraw from, or become less than a half-time student at an approved school (6 semester hours in an accredited degree institution),....

The notes also provide in Article IV:

1) No later than four months after I cease being matriculated or at least a half-time student I will contact the leading institution to sign a Repayment Promissory Note....

7) The delay on the lender's part (or the holder if the loan is transferred) or NYSHESC to enforce any condition(s) of this note shall not release the borrower from these condition(s) nor prevent the lender (or the holder if the loan is transferred) or NYSHESC from enforcing any or all of these conditions in the future.

Also, under **"YOUR STATEMENT OF RESPONSIBILITIES"** the notes state:

2. I understand that I must report to the lending institution (or the holder if the loan is transferred) or to NYSHESC any of the following **in writing**, without exception:

a. If I fail to enroll, leave school for any reason or cease to be matriculated;

b. If I, as a degree student take less than six hours of credit per semester....

In the spring of 1982 the debtor graduated from Columbia Law School. In January of 1983, the debtor obtained his M.B.A. from Columbia Business School.

From the spring of 1983 through the end of April 1985, with some breaks, but none longer than nine months, the debtor attended Rutgers on a part-time basis, taking six semester hours each time he was enrolled.

He studied tax, computers, Spanish, political science, German, art and business. He frequently supplied NYSHESC with information regarding his status as a student and qualification for deferred status.

From the date of his 1983 graduation until 1988, the debtor did not make any payments on the subject loans. He has made at least two payments since then and perhaps as many as four.

Upon graduation from law school he was employed as an attorney. He is licensed in both New York and New Jersey and has been on inactive status since 1985. He worked as an attorney (for two firms) for approximately three years. He does not intend to work as an attorney again. Since 1985 he has experienced times of unemployment and employment in various aspects of business including computer-related jobs and as a paralegal. He aspires to be a writer and has written one book which sold more than 4,000 copies.

On April 21, 1992, the debtor filed a Chapter 7 petition for bankruptcy relief.

On September 21, 1992, the debtor obtained employment with the Resolution Trust Corporation (RTC) earning $24,096 a year, on a temporary basis not to exceed one year, subject to renewals. His take-home salary is approximately $699.51 bi-weekly, or approximately $1,504 per month after taxes and insurance. No legal training is necessary for his job with the RTC.

The debtor testified he is in good health and has no dependents.

On August 3, 1992, the debtor filed a complaint to have the subject student loans and others discharged under Section 523(a)(8). He amended his complaint on November 16, 1992 with the consent of NYSHESC. The amended complaint contends that the loans should be discharged because they have been due for more than seven years pre-petition or alternatively, not excepting the debt will impose an undue hardship.

A student loan is excepted from discharge under Section 523(a)(8) as follows:

(8) for an education benefit overpayment or loan made, insured or guaranteed by a

governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; .....

The debtor contends that he was not matriculated in Rutgers and consequently the subject loans matured in 1983, which was more than seven years prior to filing his bankruptcy petition. The debtor asserts that the word "matriculate" means to be enrolled in a college as a candidate for a degree. He states that while he was at Rutgers he was simply taking courses and not a candidate for a degree.

The debtor also contends that he is entitled to a hardship discharge because he cannot make payment on the subject student loans at the rate of $260 per month and still meet his living expenses. He also states that he does not want to use the education for which he obtained the loans and, therefore, should not be required to pay for it.

The defendant contends that based upon the debtor's enrollment as a part-time student at Rutgers his loans did not mature prior to the end of April, 1985.[1] The defendant also asserts that the debtor is not entitled to a hardship discharge as he has the current ability and potential to repay his student loans.

Originally the defendant contended that the debtor had requested and obtained continuous deferments of his loans and, therefore, payments were not due more than seven years prior to the bankruptcy. The defendant now contends that the loans did not mature until 1991, which is nine months after the debtor ceased to be a part-time student. Pursuant to Bankruptcy Rule 7015(b) when issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised in the pleadings. Mr. Nick of the NYSHESC testified that because of the debtor's part-time status as a student, the loans did not mature until 1991 and consequently no deferments were necessary. This amendment to conform to the evidence is therefore appropriate.

The first question is when did the loans mature.

As stated, the notes provide that the debtor will begin to repay the loan nine months after he ceased to be matriculated or became less than a half-time student.

The word "matriculate" is not defined in the notes. However, *Webster's Third New International Dictionary* defines matriculate as follows:

**1 Matriculate 1:** to admit to membership in a body, society, or institution esp. a college or university by entering the name in a register: **Enroll** <had been *matriculated* in the university> and have one's name officially registered after having previously met entrance requirements and typically after having successfully passed an entrance examination

**2 matriculate:** one that has been accepted into a college or university or other institution as a student or candidate for a degree

The first definition says nothing about being enrolled as a candidate for a degree. Mr. Nick of the NYSHESC testified that matriculation was a factor that was no longer taken into consideration in the 1980's and forward. The rationale was that only some educational institutions determined whether a student was matriculated by having an intent down the line to obtain a degree. Since all schools did not

---

**1.** It is not necessary to consider the debtor's enrollment in school after April, 1985, because even if he had not been enrolled as a part-time student after April, 1985, the loans would have matured within seven years prior to bankruptcy and been non-dischargeable under the statute.

consider matriculation in enrolling a student, it was a standard that ceased to be relevant to the NYSHESC.

■ The factor that *was* considered by NYSHESC was whether a student was enrolled part-time. Furthermore, under the terms of the promissory notes the debtor had an affirmative duty to notify the defendant if he ceased to be matriculated. Although the debtor notified the defendant on numerous occasions that he was a half-time student and therefore entitled to a deferment, he **never once** advised them that he had ceased to be matriculated. The concept that matriculation required a student to be working towards a degree was a theory that was conceived by the debtor after the subject litigation began. The Court rejects the debtor's definition of matriculation. Based on the foregoing, the Court accepts the broader definition of matriculation which means that one only has to be enrolled in college to be matriculated.

■ However, even if one were to accept the more limited definition of matriculation that requires *candidacy for a degree*, the Court finds that the debtor meets this requirement. The debtor with no interruptions longer than nine months was a part-time student from 1983 to 1990. With all the courses he was taking he would have eventually qualified for some degree be it in computer science or otherwise. The Court concludes that the loans became due within seven years prior to filing of the bankruptcy petition and accordingly are not dischargeable under 523(a)(8)(A).[2]

The next issue is whether the debt should be excepted from discharge because it will impose an undue hardship on the debtor or the debtor's dependents.

■ The majority of courts apply the mechanical test to determine if not discharging the loan would constitute an "undue hardship." The factors to be considered can be found in the case of *In re Craig,* 64 B.R. 854, 856 (Bankr.W.D.Pa. 1986), *appeal dismissed,* 64 B.R. 857 (W.D.Pa.1986). *In re Craig* applied the mechanical test checklist to determine if not discharging the loan would constitute an "undue hardship." The list is as follows:

1. the debtor's rate of pay;
2. the debtor's skills;
3. the debtor's ability to obtain and retain employment;
4. the debtor's level of education;
5. the debtor's health; and
6. the debtor's household expenses.

■ Courts look at the time of employment and also the potential to be employed based upon education and physical impairments to employment. A debtor should show that circumstances could not foreseeably change for the better over the repayment of the loan. To prove "undue hardship" the court found that one must be suffering from truly severe, and even uniquely difficult circumstances. In the *Craig* case the debtor was on public assistance at the time of filing and had a B.A. with vocational training. The court did not find the debtor proved an "undue hardship."

■ The case of *In re Frech,* 62 B.R. 235, 242–43 (Bankr.D.Minn.1986), examines the requirements of two additional tests once the mechanical test has been satisfied. The court states that the debtor bears the burden of showing that his income and other financial resources will not be sufficient to maintain him at a minimal or "poverty level" standard of living under a continuing obligation to make some payment. Thus, if the debtor satisfies the mechanical test that he cannot make such payments, he must satisfy the "good faith test" by showing he is actively minimizing current household living expenses and maximizing his personal and professional resources. The debtor must be currently making a strenuous effort to maximize his personal income, within the practical limitations of his vocational profile.

**2.** The Court finds the debtor's reliance upon *In re Whitehead,* 31 B.R. 381 (Bankr.S.D.Ohio 1983), is misplaced. There the lender unilaterally granted a deferment to the student loan borrower without any request for a deferment.

■ If the good faith test is satisfied, then many courts apply the "policy test" which examines whether allowing discharge of a given educational loan would constitute the abuse of bankruptcy remedies. The court is first to look at the magnitude of the student loan obligations in the total debt structure, and then consider the personal, professional, and financial benefit which the debtor has derived and will derive from the education financed by the loans in question. *Id.*

One court tried to formulate an objective test in *In re Bryant,* 72 B.R. 913, 915–16 (Bankr.E.D.Pa.1987). Its test for determining undue hardship first examines whether the net income and resources of the debtor and his dependents are substantially over the federal poverty guidelines. If the income is below or close to the guidelines, the lender can prevail only by establishing that circumstances exist which render these guidelines unrealistic, such as the debtor's failure to maximize his resources or clear prospects of the debtor for future income increases.

Under the *Bryant* test if there is above poverty level income, the debtor must establish unique or extraordinary circumstances which should render the debt dischargeable. The examination for unique circumstances requires a review of the reasonableness of living expenses and special expenses for physical or mental illness, unusual responsibilities arising from the needs of dependents, and financial situation present and future based on historical employment. Based upon that review the *Bryant* court discharged the loans of a lawyer who could not pass the bar after five attempts and was substitute teaching with an income below the poverty level.

A slightly different approach was taken by the court in *Malloy v. United States (In re Malloy),* 144 B.R. 38 (Bankr.E.D.Va. 1992). The court said in conjunction with looking at the debtor's employment status, future earning potential, expenses in relation to income, medical problems or burdensome medical expenses, and other extraordinary expenses as well as the debtor's good faith (whether the debtor has made any effort to try to repay the loan since it first became due), the court must consider whether the education has put the debtor in a better position to obtain desirable employment. There the court discharged a $90,000 student loan resulting from a failed attempt to complete medical school. The debtor was unable academically to stay in school or get into another school and he could only obtain employment at a menial job.

With respect to a hardship discharge under Section 523(a)(8)(B), the Court finds that even those courts who say they do not apply the mechanical test have most of the elements of that test in their analysis.

■ In regard to the facts of this case that pertain to hardship, the Court finds as follows:

1. The debtor is in good health and has no dependents.

2. The debtor's rate of pay is well above the poverty level. He is making over $24,000 per year.

3. The debtor has obtained many skills throughout his education, including computer, reasoning and business skills.

4. As to the debtor's ability to obtain and retain employment, the debtor has left a number of jobs, some voluntarily, some involuntarily, however, he appears to be able to obtain and retain employment usually for periods of a year or more.

5. As to the debtor's level of education, it goes without saying that the debtor is well educated.

6. The debtor's household expenses appear to be excessive. The debtor needs to find alternative methods to obtain sustenance other than dining out. In addition, his recreation expenses are not reasonable when his creditors go begging. The Court does not find that his estimated future medical and dental expenses have been supported by anything more than pure conjecture. The debtor's unilateral election to pay his brother on a pre-petition dischargeable loan while ignoring legitimate creditors is not acceptable here. Also the debtor did not establish that his voice mail system or Compuserve, although conve-

nient, were necessary at $25 per month. His allocation of $141 in his budget for non-NYSHESC student loans may be excessive or not required at all especially since he has made no post-petition payments on those loans. The $55 for extra future medical expenses if he leaves the employment of RTC is speculative at best as are future legal expenses of $25 per month. The $100 per month for non-job related transportation, the $100 per month for computer expenses, the $45 per month for entertainment and the $98 per month for contingencies are inflated. In short, the debtor's budget is excessively bloated and could be pared back without causing him any hardship, thus leaving more than ample funds to pay the debt due NYSHESC at $260 per month.

Based on the foregoing, the Court also finds that the debtor has not met the "good faith test" by showing he is actively minimizing current living expenses and maximizing his personal and professional resources. He intentionally seeks jobs which will enable him to have time and energy for writing. These jobs tend to be lower paying than the salary he could earn by applying either his M.B.A. or J.D.

The Court further finds that under the "policy test" the discharge of the subject loans would constitute the abuse of bankruptcy remedies. Although the student loan is significant, the debtor has derived and will derive significant personal, professional, and financial benefit from the education financed by the loans in question. Furthermore, based upon what appears to be a conscious effort to avoid payment of these loans by deferment requests and otherwise, public policy would be offended by allowing the circumstances created by the debtor himself to justify nondischargeability. There are no uniquely difficult circumstances to justify discharging these loans. Although the debtor does not find the practice of law to be personally satisfying, there is no provision in any of the loan documents that makes this a condition precedent to repayment of the loans as the debtor wants the Court to believe.

As an aside, the Court notes that the debtor appears to be a very capable, articulate and highly educated young man. He aspires to be a successful writer and the Court wishes him well. Nevertheless, as stated above the Court concludes that there is no basis to except the subject loans from discharge under 11 U.S.C. § 523(a)(8).

ORDERED that the complaint is denied, and the subject debt due NYSHESC is excepted from discharge.