In re Raymond L. WOODCOCK, Debtor.

Raymond L. WOODCOCK, Appellant,

v.

CHEMICAL BANK, NYSHESC, as servicing agent for Chemical Bank; Columbia University; University Accounting, as servicing agent for Columbia University; U.S. Attorney General, Appellees.

No. 94–1101.

United States Court of Appeals, Tenth Circuit.

Jan. 6, 1995.

Raymond L. Woodcock, pro se.

Dolores B. Kopel, Denver, CO, for appellees.

Before ANDERSON, SETH, and BARRETT, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Appellant Raymond L. Woodcock (debtor) graduated from law school in 1982. He financed his legal education with four guaranteed student loans, each for $5,000. The loans were guaranteed by NYSHESC (creditor). In 1992, debtor filed bankruptcy under Chapter 7 of the United States Bankruptcy Code. He brought this adversary proceeding to determine the dischargeability of his student loans. The bankruptcy court ruled the loans are not dischargeable, 149 B.R. 957. The district court affirmed and debtor now appeals. We exercise jurisdiction under 28 U.S.C. § 158(d) and affirm in part and reverse in part.[1]

Generally, student loans are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(8). The Code permits such loans to be discharged, however, if they "first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the [bankruptcy] petition," id. § 523(a)(8)(A), or if excepting the loans from discharge "will impose an undue hardship on the debtor and the debtor's dependents," id. § 523(a)(8)(B). On appeal, debtor contends that his loans are dischargeable under either exception. He also complains that the bankruptcy court improperly excluded certain evidence and improperly allowed creditor to amend its pleadings to conform to the evidence. We review the bankruptcy court's legal determinations de novo and its factual findings for clear error.

Robinson v. Tenantry (In re Robinson), 987 F.2d 665, 667 (10th Cir.1993).

■ Turning to the first exception, we must determine when debtor's loans first became due. A loan becomes due when the first installment is due. See Nunn v. Washington (In re Nunn), 788 F.2d 617, 619 (9th Cir.1986). The four promissory notes for the loans state that repayment begins at "the end of the ninth month following the month in which I cease to be matriculated, withdraw from, or become less than a half-time student at an approved school." R.Vol. V, exhibits AA–1, AA–2, AA–3, AA–4. Repayment also begins on the date the borrower fails to "enroll for the term and in the educational institution for which the application was approved;" fails "to verify [ ] status as a student when requested;" or fails "to make required interest payments." Id. At issue is whether debtor ceased to be matriculated, withdrew from, or became less than a half-time student before April 21, 1985—seven years before he filed bankruptcy.

■ The relevant facts are undisputed. After graduating from law school in the spring of 1982, debtor attended business school. He graduated with his M.B.A. in January 1983. After that, he attended college on a part-time basis until 1990, taking a variety of courses. Creditor[2] concedes that debtor was at least a half-time student, without a nine-month break, at all times before April 21, 1985.

■ Debtor argues that his loans matured nine months after he graduated from business school because after that point he "ceased to be matriculated," in the sense that he was not enrolled in a degree program. Creditor, on the other hand, claims that the term matriculated simply means enrolled. According to creditor, debtor's loans did not mature until 1991, nine months after he ceased being a half-time student.

---

1. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Creditor NYSHESC is effectively the only appellee. The other named appellees did not file briefs and were not parties to the district court proceeding.

The promissory notes do not define the term matriculate. The bankruptcy court noted that the dictionary offers both parties' definitions for matriculate: to enroll at a college or university, or to be accepted as a student or candidate for a degree. Without determining whether the term is ambiguous, the bankruptcy court concluded that "to be matriculated" within the meaning of the promissory notes, debtor only had to be enrolled in school. Alternatively, the court reasoned that even if "matriculated" required enrollment in a degree program, debtor had not ceased matriculating after he graduated from business school because "[w]ith all the courses he was taking he would have eventually qualified for some degree...." R.Vol. I, doc. 29 at 7. In its order denying debtor's motion for a new trial, the bankruptcy court also concluded that, in any case, debtor is estopped from claiming he ceased matriculating because he did not inform creditor of that fact, as was required by the promissory notes. On appeal, the district court agreed with the bankruptcy court's primary holding that matriculate means to enroll in school.

Interpretation of the promissory notes is governed by state law. *See Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (property interests of the parties to a bankruptcy proceeding are "created and defined by state law"). New York law, which governs the interpretation of the notes, instructs that the terms of a contract should be construed in light of the whole contract. *See W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639, 642 (1990). Courts resort to extrinsic evidence only when the contract is ambiguous. *See id.; see also Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.),* 998 F.2d 783, 789 (10th Cir.1993). Whether a contract is ambiguous is a question of law. *In re Kaiser Steel Corp.,* 998 F.2d at 789. Interpretation of the unambiguous terms of a contract is also a question of law. *Id.*

We hold that the bankruptcy court erroneously interpreted "matriculate" to mean enroll and that the term unambiguously requires enrollment in a degree program. Our interpretation does not offend other provi-

sions of the notes. The notes list "failure to enroll for the term and in the educational institution for which the application was approved" as a separate event which triggers repayment. R.Vol. V, doc. AA–1. Moreover, the notes explicitly require repayment on the date the borrower fails to enroll, which contradicts the requirement to repay nine months after the borrower ceases to be matriculated, should matriculated be interpreted to mean enrolled. Another provision uses the terms matriculate and enroll in the same sentence: "I understand that I must report to the lending institution ... [i]f I fail to enroll, leave school for any reason or cease to be matriculated...." *Id.,* doc. AA–5. These provisions indicate that matriculate is not synonymous with enroll. The wording of another provision, whereby the borrower agrees to sign a promissory note no later than four months after he or she "cease[s] being matriculated or at least a half-time student," indicates that matriculation is more than simple enrollment.

Further, our interpretation is supported by a common-sense reading of the phrase "cease to be matriculated, withdraw from, or become less than a half-time student at an approved school." The first clause of that phrase sets out the general rule that the educational loan should be repaid when the borrower, for whatever reason, has stopped pursuing a degree. The second and third clauses identify circumstances in which the borrower's progress toward a degree will be deemed insufficient to delay maturity of the loan: the loan will mature if the borrower withdraws from school or the borrower pursues the degree too slowly, by enrolling less than half time.

Even if the term matriculate were ambiguous, the extrinsic evidence supports our conclusion. When debtor obtained his guaranteed student loans, government-backed student loans established by Title IV of the Higher Education Act of 1965, 20 U.S.C. §§ 1070–1097, eligibility was conditioned upon the student "maintaining satisfactory progress in the course of study he is pursuing." 20 U.S.C. § 1088f(e)(1) (1976); *cf.* 20 U.S.C. § 1091(a) (1993 Supp.) (current version, conditioning eligibility on "enroll[ment]

or accept[ance] for enrollment in a degree, certificate, or other program ... leading to a recognized educational credential"). *See generally In re Pelkowski*, 990 F.2d 737, 739–40 (3d Cir.1993) (discussing guaranteed student loan program). Since debtor had to pursue a course of study to obtain the loans, it is not surprising that maturity would be measured by whether he continued to pursue a course of study.

Trial testimony of creditor's employee confirms that the term matriculate was meant to require pursuit of a degree. When asked what the term meant, as it was used in the promissory notes, Frederick Nick, creditor's senior student loan control representative, testified that matriculation referred to "whether or not a student's intent down the line is to attain a degree." R.Vol. III at 18. He explained that educational institutions throughout the nineteen seventies and early eighties determined whether a student was matriculating, but some schools no longer make that determination. *Id.* at 17–18. He stated that because not all schools determine whether students are matriculating, creditor stopped gauging maturity of student loans by whether students had ceased matriculating. *Id.* at 18. Matriculation was "a standard that ceased to be workable." *See id.* at 19.

▪ A party cannot, of course, unilaterally modify even unworkable provisions of a contract. Maturity of the loans is strictly governed by the terms of the promissory notes. We hold as a matter of law that debtor's loans matured nine months after he failed to enroll in a degree program. Debtor's uncontradicted testimony establishes that after he graduated from business school, he did not enroll in a degree program. There is no evidence to support the bankruptcy court's speculation that debtor would have eventually qualified for a degree, with all the courses he was taking. Therefore, debtor's loans matured in October 1983, nine months after he graduated from business school.

▪ At this juncture, dischargeability turns on the critical factor of whether there have been "any applicable suspension[s] of the repayment period" which must be excluded when determining whether the loans first became due more than seven years before the bankruptcy filing. *See* § 523(a)(8)(A); *see, e.g., Huber v. Marine Midland Bank, N.A. (In re Huber),* 169 B.R. 82 (Bankr. W.D.N.Y.1994) (gauging dischargeability by whether deferments which debtor obtained, but for which he was ineligible, constituted applicable suspension of repayment period); *Georgina v. Higher Educ. Assistance Found. (In re Georgina),* 124 B.R. 562 (Bankr. W.D.Mo.1991) (determining whether nine forebearances constituted suspension of repayment within meaning of § 523(a)(8)(A)). The bankruptcy court made no findings on this issue and the record is not sufficiently developed for this court to resolve the issue on appeal. Therefore, we must remand for a determination of whether there has been "any applicable suspension of the repayment period" within the meaning of § 523(a)(8)(A).

▪ Next, we consider whether the loans are dischargeable under the undue hardship exception, § 523(a)(8)(B). This is a question of law which we review de novo. *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356, 359 (6th Cir.1994); *In re Roberson,* 999 F.2d 1132, 1134 (7th Cir.1993). Debtor bears the burden of demonstrating undue hardship. *In re Roberson,* 999 F.2d at 1137.

The Code does not define "undue hardship." Courts have crafted numerous definitions. *See, e.g., id.* at 1134–36 (discussing the mechanical, good faith, policy, and *Brunner [v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2d. Cir.1987)] tests). The bankruptcy court applied the mechanical test, *see Craig v. Pennsylvania Higher Educ. Assistance Agency (In re Craig),* 64 B.R. 854, 856 (Bankr.W.D.Pa.), *appeal dismissed,* 64 B.R. 857 (W.D.Pa.1986), the good faith and policy tests, *see North Dakota State Bd. of Higher Educ. v. Frech (In re Frech),* 62 B.R. 235, 241–43 & n. 9 (Bankr.D.Minn. 1986), and the objective test, *see In re Bryant,* 72 B.R. 913, 915–16 (Bankr.E.D.Pa. 1987). The bankruptcy court concluded that debtor had not shown undue hardship under any of the tests. The district court agreed. After considering debtor's arguments on this issue, we affirm the denial of discharge under

the undue hardship exception for substantially the reasons stated by the district court.

■ Finally, we reject debtor's challenges to the bankruptcy court's procedural rulings. First, debtor complains that the bankruptcy court erred in refusing to admit his sworn affidavit and the majority of his exhibits into evidence. The bankruptcy court ruled that the excluded evidence contained offensive and irrelevant material. Debtor was allowed to testify at trial and the court admitted the exhibits debtor referred to during his testimony. Although debtor complains on appeal that the excluded evidence was essential to his case and, without it, he was denied a fair opportunity to present his position, the alleged unfairness is not borne out by the record. Debtor was given an opportunity, subject to the rules of evidence, to present his full testimony at trial. He made only a vague objection to the bankruptcy court that his "story" would not be complete without the evidence. We cannot conclude in this situation that the bankruptcy court abused its discretion, *see Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1011 (10th Cir.1992), in excluding the evidence.

■ Second, debtor argues that the bankruptcy court improperly allowed creditor to amend its position to conform to the evidence. Originally, creditor conceded that the loans first became due more than seven years before debtor filed bankruptcy and argued that debtor had been granted continuous deferments to delay repayment. At trial, creditor claimed that the loans did not mature until 1991, when debtor ceased being a part-time student. Relying on Bankruptcy Rule 7015, the bankruptcy court amended creditor's pleadings to conform to the evidence. That rule, by incorporating Fed.R.Civ.P. 15(b), treats issues not raised by the pleadings, which have been tried by express or implied consent of the parties, as though they had been raised by the pleadings. *See* Bankruptcy Rule 7015; *cf.* Fed.R.Civ.P. 15(b). We review the bankruptcy court's decision to allow amendment of the pleadings for an abuse of discretion. *Cf. Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 457 (10th Cir.1982) (reviewing amendment under Fed.R.Civ.P. 15(b) for abuse of discretion).

Debtor claims that he suffered prejudice by creditor's change of position on the day of trial. *See* Bankruptcy Rule 7015. He insists that he was surprised by creditor's arguments regarding matriculation. As the district court observed, however, debtor himself raised the matriculation argument the day before trial. Prior to that, debtor had argued that the loans first became due more than seven years ago, but he had not argued that the loans matured because he ceased matriculating. Creditor plainly stated its disagreement with debtor's theory at trial and, with no objection from debtor, presented evidence in support of its view that the loans did not mature more than seven years before the bankruptcy. Debtor did not request a continuance, once creditor presented its evidence. *See id.* We hold that under these circumstances the bankruptcy court did not abuse its discretion in concluding that the maturity date of the loans was an issue tried by consent of the parties.

The judgment of the United States District Court for the District of Colorado is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for a determination of whether there has been "any applicable suspension of the repayment period" within the meaning § 523(a)(8)(A).

SETH, Circuit Judge, writing separately:

I am not prepared to concur in the resolution of the several questions included in the majority's disposition, but I concur in a remand.