**In re Pedro VAZQUEZ, Zoe Vazquez, Debtors.**

**Pedro VAZQUEZ, Zoe Vazquez, Plaintiffs,**

v.

**UNITED STUDENT AID FUNDS, INC., Defendant.**

**Bankruptcy No. 95–12126–BKC–AJC.**
**Adv. No. 95–1173–BKC–AJC–A.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 22, 1996.

Guillermo J. Farinas, Miami, Florida, for Debtors/Plaintiffs.

Christie D. Arkovich, Tampa, Florida, for Defendant.

James Feltman, Trustee, Miami, Florida.

## ORDER DETERMINING DEBT DISCHARGEABLE

A. JAY CRISTOL, Chief Judge.

This matter came on for trial before the Court on January 17, 1996. Debtor, Zoe Vazquez, is seeking discharge of a student loan pursuant to § 523(a)(8)(B) [1] as an undue hardship on the Debtor. The Court, having considered the documentary evidence, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise duly advised in the premises, does hereby make the following findings of fact and conclusions of law:

Historically, student loans were not specifically excepted from discharge under the Bankruptcy Code, but were treated like other debts. In 1976, a law student filed a petition for bankruptcy immediately following graduation and attempted to wipe out substantial student loan debt obligations on the threshold of his entry into a potentially lucrative legal career. The Florida Board of Bar Examiners was outraged and denied him admission to the Bar on moral grounds. The Board's decision was upheld by the Florida Supreme Court. *Florida Board of Bar Examiners v. G.W.L.*, 364 So.2d 454 (Fla.1978). Congress reacted by creating 11 U.S.C. § 523(a)(8) which provided that a student loan could not be discharged until at least five years had passed after the loan became due. This five year period was extended to seven years by the Crime Control Act of 1990.

Apparently, it was the intention of Congress that a debtor who borrowed money to enhance her education should not be immediately permitted to discharge that debt without giving some time to permit the enhanced education to provide enhanced earnings and the opportunity to repay the debt. This is particularly true in the case of professionals such as doctors and lawyers who graduate professional school with debts these days often in excess of $100,000.00, but who are well able to repay such sums over a

1. The student loan first became due less than seven years before the date of the filing of the Petition. Accordingly, § 523(a)(8)(A) is inapplicable to the case at hand.

period of years. As a safety valve, Congress provided the hardship discharge provision. The case law has been relatively uniform in holding that merely being unemployed or unable to repay a student loan debt a short time after completing the education purchased by the debt, is not an undue hardship and discharge will not be granted in those circumstances. *In re Pichardo,* 186 B.R. 279 (Bankr.M.D.Fla.1995); *In re D'Ettore,* 106 B.R. 715 (Bankr.M.D.Fla.1989); *In re Craig,* 64 B.R. 854 (Bankr.W.D.Pa.1986); *In re Collier,* 8 B.R. 909 (Bankr.S.D.Ohio 1981). The question before the Court is whether or not Zoe Vazquez is entitled to a hardship discharge.

Who is Zoe Vazquez? Zoe Vazquez is married to Pedro Vazquez who is permanently disabled with rheumatoid arthritis. They have a four year old daughter. Their scheduled income is $915.00 per month. Mr. Vazquez previously worked as a cable television installer but has been unable to work since 1993 because of his arthritis condition. He scheduled his present monthly income as $466.00. He receives two disability checks which add up to nearly that amount, give or take a few dollars. He testified he received a Social Security check for $304.00 and an additional benefit of $174.00 which totals $478.00 rather than $466.00. In observing Mr. Vazquez on the stand, the Court is certain that the $12.00 discrepancy between the scheduled amount and the testimony is the result of his inability to add rather than any intent to deceive the Court.

Mrs. Vazquez had a job with Betty Dain Creations earning about $7.20 an hour. She gave up that job to take training as a medical technician and incurred debt in the original principal amount of $7,250.00 to pay for this education. Upon completing the education, she has been unable to find work as a Certified Cardiographic Technician. From her appearance and testimony, it is clear that she is neither well educated nor articulate. While not impossible, it appears doubtful to the Court that she will ever obtain work as a medical technician. She believes that the training was worthless as it has not given her the ability to obtain employment.

Mr. and Mrs. Vazquez live in an old used trailer on the outskirts of Miami. They pay $209.26 a month on the purchase of the trailer, and the trailer is very likely depreciating at a rate faster than they are establishing equity. They also pay a rental fee of $363.20 per month to maintain the trailer on a lot. That totals $572.46 per month, or 63% of their gross income, to keep a roof over their heads.

Mr. and Mrs. Vazquez are poor but proud. Their proudest possession is their four year old daughter which Pedro Vazquez described with the comment, "She is my life." The Debtors drive a 1986 Ford which they proudly claim is in good condition. They spend about $50 a month on this transportation. The Debtors' schedules reflect nothing for the purchase of clothing. When queried about this, Mrs. Vazquez replied that her family provides clothes for her daughter. She testified that she wears the old castoff clothes of her sister and that her husband has a few pair of trousers and that is all he needs. The Debtors scheduled $0.00 for medical and dental expenses despite the fact that Mr. Vazquez testified that he often must purchase some of his arthritis medicine. Mr. Vazquez also testified that he is often unable to afford this expense and must forego the medication.

The Court found incredible the amount scheduled for food for a family of three, $250.00. The U.S. Trustee Guidelines in the Southern District of Florida suggest that $300.00 will feed one person for a month. The Court asked Mrs. Vazquez what the family ate. She is a proud lady. She assured the Court that they either ate meat or chicken once a week. When asked what else they ate, she assured the Court that they ate a lot of vegetables and that they provided orange juice for her daughter.

In *In re Webb,* 132 B.R. 199 (Bankr.M.D.Fla.1991), Judge Proctor wrote, "It is well settled that the basis of hardship must be long-term in order for the Court to find dischargeability under § 523(a)(8)." In determining the existence of undue hardship, the Court must look to the debtor's future prospects as well as her current situation. To prove undue hardship, the Debtor must

show that if she is obligated to repay the student loan, her remaining financial resources will allow her to live only at a poverty level standard for the foreseeable future. In this case, it is clear that the Debtor is living below the poverty level even without the repayment of the student loan.[2]

Judge Proctor went on to say that the debtor must also demonstrate that he or she is attempting to minimize living expenses and maximize financial resources. The Court is satisfied that these Debtors are doing exactly that. If Mrs. Vazquez were to obtain a job at the minimum wage, which is $4.25 per hour, or an entry level job at McDonald's or Burger King starting $4.25 per hour, and worked a 40 hour week, she could earn an annual income of $8,500.00 before taxes and take home approximately $6,375.00. Upon doing this, she would no doubt lose her food stamps and other welfare check and the family's $915.00 income would be reduced to $478.00. The $478.00 per month added to the net income from this entry level employment would likely yield a total annual income of approximately $12,111.00 which is still well below the poverty level and hardly enough for them to have a normal budget for food for a family of three.

The Court is satisfied that Mr. & Mrs. Vazquez are honest, well-intended debtors who, because of lack of education and circumstance, find themselves trapped in the poverty cycle. Zoe Vazquez attempted to move up and out. She tried to educate herself to improve her earnings and better her life and that of her family. The effort was to no avail and there is ample evidence of her unsuccessful efforts to obtain work in the area wherein she was supposedly trained.

The Court is aware of many scams where profit-hungry solicitors enroll people into educational programs which provide nothing of practical value to the student and from which the "graduates" are able to achieve little if anything. Whether this loan was for that type of scam program is not apparent from the record. In any event, even if the educational program was a good and valid program, the promised and desired result has not been achieved. Mrs. Vazquez offered evidence of seeking job opportunities at Miami Children's Hospital and through a temporary medical personnel service, and has accomplished little or nothing.

This is not the case of a young doctor or lawyer about to begin earning a five or six figure income every year for the rest of her life and seeking to wipe out the debt for the education which provided that career opportunity.

The Vazquez family are part of an American tragedy that is playing today across the land. They are a family of decent well-intended people subsisting below the poverty level. Zoe Vazquez tried to grab the life preserver tossed to her, no doubt with the best of intentions. But when she let go of the little bit of flotsam (her entry level job) to grasp it, the life preserver turned out to be illusory. The Court has no way of knowing if she was sold a bill of goods and incurred her debt to attend a fraudulent program of no value or whether the program was valid but she was not qualified to take the course or absorb the training.

People like the Vazquez family need help to obtain education and to learn the job skills which will improve their lot in life. Huge sums of money are being spent on programs with that intent. There probably needs to be better monitoring and supervision of these programs to insure that persons receiving educational loans are dealing with bona fide programs that are able to help them, and that loan applicants are qualified for and are able to complete with beneficial results, the educational programs for which they apply.

Under the circumstances of this case it would be cruel to deny discharge of this debt. This is a human tragedy that cries out for amelioration through bankruptcy relief. The Court is satisfied that it would be an undue hardship to deny discharge of this debt to this Debtor.

Based on the foregoing, this Court determines that the the debt of $7,655.95 owed to Defendant, United Student Aid Funds, Inc., by the Debtors is dischargeable.

2. The Federal Information Center reports that the income poverty line for a family of three in

1995 was $12,590.00. The Debtors total income is scheduled at $10,980.00.

Pursuant to Bankruptcy Rule 9021, a separate Final Judgment of even date has been entered in conformity with these Findings of Fact and Conclusions of Law.