**In re George C. MALLINCKRODT.**

**No. 01–2430–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 28, 2002.

John Daniel Eaton, Steel Hector & Davis, Miami, FL, Jose Eduardo Cil, Jef-

frey Paul Bast, Holland & Knight, Miami, FL, for appellants.

Mark David Wallace, Stack Fernandez Anderson Harris & Wallace, Miami, FL, for appellee.

## ORDER REVERSING BANKRUPTCY DECISION AND REINSTATING LOANS

MORENO, District Judge.

The issue in this bankruptcy appeal is whether the bankruptcy judge erred when it concluded that repayment of Appellee George Mallinckrodt's student loans would constitute an "undue hardship" under 11 U.S.C. § 523(a)(8). Appellants contend that under the correct legal standard, Mallinckrodt did not satisfy its burden of showing that its financial situation warranted discharge of the loan. The Court agrees and therefore reverses the visiting bankruptcy judge's decision.

## I. BACKGROUND

Mallinckrodt, a forty-two-year-old with no wife or children, owes Appellants approximately $73,000 from loans that Mallinckrodt received while pursuing his Master's degree in mental health counseling from Barry University. Mallinckrodt lives on Miami Beach in a condominium that he owns outright from an inheritance. He has no physical or psychological impairments, nor does he have any alcohol or drug addictions.

After earning his undergraduate degree in psychology from University of Miami, Mallinckrodt sought to "improve his education" by getting a Master's degree. Prior to enrolling at Barry University, Mallinckrodt played professional tennis and was ranked within the top 800 players in the world. In addition, Mallinckrodt received a real estate brokerage license, which is still current, but "inactive."

Since receiving his masters in December 1995, Mallinckrodt has sought employment in the mental health field. He completed an unpaid internship with Catholic Family Services in February 1996, but was unable to secure a paid position. In order to support himself, Mallinckrodt worked as a professional tennis instructor and coach until he sustained an Achilles tendon injury. He has since recovered from this injury. In March of 1997, Mallinckrodt began working part-time at Horizon Psychological Services ("Horizon"), his current employer.

Horizon pays Mallinckrodt a very low salary. In 1999, for example, Mallinckrodt earned $6,040.00 from his job there. Mallinckrodt has attempted to supplement this salary by teaching tennis. As of now, however, he has only one student. The parties stipulated before trial that Mallinckrodt's monthly net income was $549.00. Mallinckrodt testified at trial, however, that his monthly income had increased slightly to approximately $760 and his monthly expenses were approximately $750.

Mallinckrodt has attempted to find employment that pays better than Horizon, although he only considers positions in the fields of mental health counseling and tennis instruction and geographically limits his job search to Miami Beach because he does not own a car. In pursuit of a job, he has "established personal contacts, sent flyers to personal homes advertising his tennis coaching abilities, contacted mental health related websites, sent out numerous resumes and advertised in the New Times."

Mallinckrodt made very few payments on his loans after graduating from Barry University. On the loan owed to Appellant TERI, he made seven payments between December 1995 and February 1999 total-

ing $580.00. On the loan owed to Appellant ECMC, he made ten payments in 1998 of $7.99 each. He stopped making payments in February 1999 because he was "close to filing or thinking about filing for bankruptcy."

In February 2000, Mallinckrodt filed a voluntary Chapter 7 bankruptcy petition, after which he initiated this adversary proceeding to discharge his debt. The proceeding took place before Judge Utschig, a visiting judge from the Western District of Wisconsin. After conducting a half-day trial, the court entered a judgment and order discharging all student loan obligations owed to Appellants, concluding that "he simply cannot repay the loans."

## II. ANALYSIS

█ The relevant statute in this appeal is 11 U.S.C. § 523(a)(8), which Congress enacted in an effort to make student loans more difficult to discharge than other debt. *See In re Mallinckrodt*, 260 B.R. 892, 898 n. 4 (Bankr.S.D.Fla.2001). Congress apparently intended that students not be permitted to avoid their loan commitments without allowing sufficient time to let their education provide increased income. *See In re Vazquez*, 194 B.R. 677, 678 (Bankr.S.D.Fla.1996). Accordingly, under § 523(a)(8), student loans are presumptively nondischargeable. A debtor's loans may only be discharged if he can show that repayment would cause "undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).

█ "Undue hardship" is not defined in the bankruptcy code. It is clear from the adjective "undue," however, that "Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans ...." *In re Pena*, 155 F.3d 1108, 1110 (9th Cir.1998) (quoting *In re Brunner*, 46 B.R. 752, 753 (S.D.N.Y.1985) *aff'd* 831 F.2d 395 (2d Cir.1987)). None-

theless, without specific Congressional instruction, Courts have been left to fashion legal tests to determine whether a debtor can show "undue hardship."

In this case, the bankruptcy court found that Mallinckrodt's loans should be discharged after applying a combination of legal formulas, including the test established in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir.1987). *Mallinckrodt*, 260 B.R. at 900. This Court, examining Mallinckrodt's financial condition in accord with the *Brunner* standard, finds his financial condition insufficient to constitute "undue hardship" under § 523(a)(8).

### A. The "Undue Hardship" Standard

█ In *Brunner*, 831 F.2d at 396, the Second Circuit developed what is now the most widely used standard to evaluate "undue hardship." *See In re Pena*, 155 F.3d 1108, 1111 n. 3 (9th Cir.1998) (collecting cases applying *Brunner* and noting its "wide acceptance"). The court articulated a three part test that requires a debtor to show: (1) that the debtor cannot maintain a "minimal" standard of living for himself if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) that the debtor has made good faith efforts to repay the loans. *Brunner*, 831 F.2d at 396.

█ While the Eleventh Circuit has not specifically adopted this test, the weight of authority among bankruptcy courts within the circuit favors using it. *See, e.g., In re Ivory*, 269 B.R. 890, 898 (Bankr.N.D.Ala. 2001) ("If a court finds that the *Brunner* factors are satisfied, the court may then find that undue hardship exists ...."); *In re Garcia*, 135 B.R. 437, 439 (Bankr. S.D.Fla.1992) (finding no justification for

discharge after applying *Brunner*). In addition, the majority of circuits outside the Eleventh that have considered the issue have adopted the *Brunner* test. *See In re Brightful*, 267 F.3d 324, 327 (3d Cir.2001); *In re Pena*, 155 F.3d 1108, 1112 (9th Cir. 1998); *In the Matter of Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993). The Sixth Circuit, however, has expanded the inquiry beyond the *Brunner* test to additional factors, including " 'the amount of the debt . . . as well as the rate at which interest is accruing' and 'the debtor's claiming expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.' " *In re Hornsby*, 144 F.3d 433, 437 (6th Cir.1998) (quoting *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir. 1996)).

In this case, the bankruptcy judge reluctantly applied the *Brunner* test after stating its "many misgivings" about it. *Mallinckrodt*, 260 B.R. at 900. The court "agree[d] far more with the Sixth Circuit's decision in [*Hornsby* ]." *Id.* at 898. The rigid *Brunner* test, reasoned the court, does not always satisfy the purpose of the bankruptcy code, which is "to provide 'honest but unfortunate' debtors with fresh starts." *Id.* (quoting *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). In light of this legislative purpose, "there is little reason to attempt to shoehorn debtors into the rigid framework of a 'test' " *Id.* at 899.

■■■■ This Court does not dispute the bankruptcy court's characterization of the legislative history behind § 523(a)(8). The court nevertheless declines the opportunity to expand the *Brunner* test and instead adopts it as the applicable standard to determine "undue hardship." As the Third Circuit stated in *In re Faish*, 72 F.3d 298, 306 (3d Cir.1995), the *Brun-*

*ner* test is the "most logical and workable" of the tests. Furthermore, the Court does not consider it overly rigid. The test allows debtors to demonstrate personal circumstances that make repayment impossible. At the same time, however, it "safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices." *Id.* at 306. Thus, the Court will apply the *Brunner* standard to Mallinckrodt's circumstances to determine whether discharge of his student loans was warranted.

## B. Application of the *Brunner* Test

■■■■ After noting its objections to the *Brunner* formula, the bankruptcy court found that "even under [the *Brunner* ] approach the debtor in this case has demonstrated that repayment of his student loans would constitute 'undue hardship.' " *Mallinckrodt*, 260 B.R. at 900. Appellants argue that the bankruptcy court's application of *Brunner* was in error because: (1) Mallinckrodt's income level is not below the poverty line; (2) there is no evidence to show that his inability to repay the loan is long-term; and (3) he has not made a "good faith" effort to repay the loan. While this Court must accept the bankruptcy court's factual findings unless they are "clearly erroneous," it is not required to accept the legal effect of those findings. *See Brunner*, 831 F.2d at 396. The Court therefore reviews the bankruptcy court's legal conclusions *de novo*.

### 1. Minimal Standard of Living

■■■■ The first prong of the *Brunner* test requires that the debtor show that

repayment would not allow him to maintain a "minimal standard of living." This showing requires more than merely establishing tight finances. *In re Rifino,* 245 F.3d 1083, 1088 (9th Cir.2001). Courts generally require "more than temporary financial adversity, but typically stop short of utter hopelessness." *Id.* In analyzing the sufficiency of a debtor's income, some courts have objectively compared it to the official poverty level. *See In re Vazquez,* 194 B.R. 677, 680 (S.D.Fla.1996) ("To prove undue hardship, the Debtor must show that if she is obligated to repay the student loan, her remaining financial resources will allow her to live only at a poverty level standard for the foreseeable future."). Others, however, have viewed the debtor's budget as a whole, subjectively and objectively evaluating the debtor's income and expenses. *See Ivory,* 269 B.R. at 909 (considering the debtor's monthly income and expenses and concluding that she "simply does not have the money to pay for the basic necessities of modern life").

■ Here, the bankruptcy court determined that Mallinckrodt's income and expenses were subjectively inadequate. The court noted that Mallinckrodt does not "live lavishly" but rather "survives paycheck to paycheck." *Mallinckrodt,* 260 B.R. at 903. While the court did not analyze in detail Mallinckrodt's income and expenses, the court explained that his monthly income was approximately $549.00 after taxes, and the expenses totaled only $544.00. The court stated that it "had no other choice but to conclude that he has made every effort to minimize expenses and maximize income." *Id.* (internal quotation omitted). According to the court, "there is nothing left once the debtor allocates funds for food, shelter, clothing, and medical treatment." *Id.*

Appellants argue that despite the court's findings, Mallinckrodt failed to meet the first prong of the *Brunner* test because, viewed objectively, his income allows him to live above the poverty level. According to the 2000 HHS Poverty Guidelines, the poverty level for a single person with no dependents is $8,350 per year. While the parties stipulated before trial to the income and expenses numbers used by the bankruptcy court, Mallinckrodt testified at trial that his monthly income was "approximately $760" and his monthly expenses totaled "approximately $750." Using the numbers that Mallinckrodt testified to at trial, his annual income would be $9,120 and therefore above the poverty line.

Nonetheless, the evidence establishes that since graduating from Barry University Mallinckrodt has never earned an annual income above the poverty level, even without making the loan payments. Further, using the income estimates from Mallinckrodt's testimony at trial, Mallinckrodt's budget surplus is only approximately $10 to $30. His expenses do not include any extravagant items. Mallinckrodt does not own a car, nor does he have dental or health insurance. Based on his current financial situation, therefore, repayment would seem to force him below a minimal standard of living.

### 2. Additional Circumstances

■ Under the second prong of the *Brunner* test, the debtor must show that additional circumstances exist indicating that he cannot maintain a minimal standard of living for a significant portion of the repayment period. As the Third Circuit recently explained, it is not enough for the debtor to demonstrate that he is in current financial straits. *Brightful,* 267 F.3d at 328. Rather, he must prove "a total incapacity . . . in the future to pay his

debts for reasons not within her control." *Id.*

Courts have made clear that satisfying this standard is not easy. In *Roberson*, 999 F.2d at 1137, for example, the Seventh Circuit reversed a bankruptcy court that had allowed a two year deferment on the debtor's student loans. The debtor had been laid off after his second conviction for driving under the influence, and had been divorced by his wife. At the time of the hearing he had no income and $680 in monthly expenses. Nevertheless, the Seventh Circuit concluded that the debtor's "dire straits are only temporary, and thus has failed to demonstrate 'undue hardship.'" *Id.* In *Brightful*, 267 F.3d at 330, the bankruptcy court found that the debtor most likely would never attain her college degree, lacked vocation training, suffered psychiatric problems and was emotionally unstable. While the Third Circuit recognized these problems, the debtor was nonetheless "intelligent, physically healthy, currently employed, possesse[d] useful skills ... and ha[d] no extraordinary, non-discretionary expenses." *Id.* Thus, the debtor had failed to prove the type of "exceptional circumstances" necessary for discharge. *Id.; see also Brunner*, 831 F.2d at 396–97 (finding that the debtor, a Master's degree holder, showed no evidence of "a total foreclosure of job prospects in her area of training"); *In re Webb*, 132 B.R. 199, 202 (Bankr.M.D.Fla.1991) (declining to discharge debt where debtor was divorced with custody of three children, one of whom was learning disabled, received no child support, and earned $12,500 annually).

 In this case, the bankruptcy judge found that Mallinckrodt satisfied *Brunner's* second prong because his career tracks are "not the lucrative opportunities the defendants suggest." *Mallinckrodt*, 260 B.R. at 901. The court pointed to the fact that he has pursued a career in mental health but it has "not been particularly lucrative." *Id.* at 902. In addition, his tennis instruction "has never garnered a significant income." While he has never sought a job as a full time tennis pro at a tennis club, the court noted that according to his testimony, these positions are "difficult to obtain." *Id.* The court also noted that limiting his job search to Miami Beach was reasonable because "for him to pursue employment significantly outside that area would require additional expenses, which might offset many of possible gains in income." *Id.* at 903. Overall, the court found "no evidence whatsoever that would suggest he is likely to make significantly more money in the future." *Id.* at 902.

As Appellants point out, however, it is not for them to show that Mallinckrodt will earn more money. Mallinckrodt has the burden to prove that he *cannot* earn more money in the years to come. *See Brightful*, 267 F.3d at 326 ("The debtor has the burden of establishing each element of [the *Brunner*] test by a preponderance of the evidence."). Here, Mallinckrodt has only proved that he has earned insufficient income up until now. Mallinckrodt has been working as an intern for Horizon with a "provisional license." In December 2001, however, Mallinckrodt became eligible to receive a full license. According to testimony at trial, the average salary for a person with a Master's degree in psychology is $41,000. Tennis pros at country clubs make "probably $50,000 a year." Looking at the record, there is no evidence other than past performance to indicate that he will be unable to earn at least these average amounts.

Mallinckrodt graduated in the top 1% of his class at Barry University. By all accounts he is healthy and intelligent. He has no dependents. In addition to his

potential fields of mental health counseling and tennis coaching, he is licensed as a real estate broker. Moreover, while his geographical limitation stems from his not owning a car, he testified at trial that his mother's car is available to him. If the car is unavailable, and Mallinckrodt were forced to use public transportation to get to work, he would not be the first Miami Beach resident to do so. Finally, he owns outright a condominium valued at $50,000 to $75,000. While selling or renting his home would certainly be unpleasant, the fact remains that Mallinckrodt owns a valuable asset that may be liquidated. Mallinckrodt has not proved any significant barriers, therefore, that would prevent him from gainful employment for a substantial portion of the repayment period. In fact, it seems that Mallinckrodt has nothing but opportunities to earn more income. He has thus failed to satisfy *Brunner's* second prong.

### 3. Good Faith

▪▪▪ The third and final prong of the *Brunner* test requires a showing that the debtor acted in good faith to repay the loan. Satisfaction of this prong does not necessarily involve a showing that the debtor actually made payments, because the debtor may not have any funds to do so. Instead, good faith is measured by the debtor's effort "to obtain employment, maximize income, and minimize expenses." *Roberson*, 999 F.2d at 1136. Furthermore, a debtor may not "willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *Id.* (internal quotation omitted).

▪▪▪ The bankruptcy court found that Mallinckrodt had shown good faith because he had made unsuccessful efforts to generate income and did not spend frivolously. The court characterized his lack

of income as resulting from situations beyond his control because his career in mental health "has not been particularly lucrative," his Achilles tendon injury interrupted his tennis coaching, and he was "not successful as a real estate broker." *Mallinckrodt*, 260 B.R. at 903. The court also observed that despite the fact that Mallinckrodt had several career tracks available, these tracks are mutually exclusive. Thus, "[f]or the debtor to accept a position as a tennis pro, or to pursue more clients for individual tennis instruction outside the Miami Beach area, will result in less time available for other endeavors, such as his mental health career." *Id.* at 901.

While it may be true that choosing one profession excludes another, the debtor must still make efforts to maximize his income in any way possible. It is clear from the record that Mallinckrodt has not done so. As described above, Mallinckrodt has unnecessarily limited his job search to Miami Beach. In addition, Appellants questioned him at trial about the extent of his search in the mental health counseling field—his chosen profession. Appellants established through this testimony that Mallinckrodt has not even contacted several potential employers, such as Jackson Memorial Hospital, outpatient centers, nursing homes, Jewish Family Services, or Miami–Dade County mental health services.

Moreover, there is no evidence that Mallinckrodt has made efforts to generate income outside of his chosen professions. The student loan program does not guarantee that debtors will find financially rewarding employment in the field of their choice. Student loans allow individuals to invest in their education and provide millions of people the opportunity to better their lives. Like any investment, however, the decision to take on debt contains risk.

If the investment does not provide the anticipated return, "the student, not the taxpayers, must accept the consequences." *Roberson,* 999 F.2d at 1137. In light of the foregoing, Mallinckrodt has not satisfied his burden of showing a good faith effort to repay the loans.

### III. CONCLUSION

Based on Mallinckrodt's current financial situation, repayment of his loans would require him to fall below a minimal standard of living. However, Mallinckrodt has not proved that this situation will be long term. In addition, he has not shown a good faith effort to repay the loan. Accordingly, the bankruptcy court is reversed and Mallinckrodt's loans are reinstated.