In re Patti Jan MERSMANN, Debtor,

Educational Credit Management
Corporation, Appellant,

v.

v.

Daniel Fisher, Educational Credit Management Corporation, St. Paul, Minnesota (Scott M. Browning and Craig R. Welling, Rothgerber Johnson & Lyons LLP, Denver, CO, with him on the briefs) for Appellant in 05–3013.

John R. Hooge, Attorney at Law, Lawrence, KS, for Appellee in 05–3013.

Peter R. Maier, Appellate Staff (Leonard Schaitman Appellate Staff, and Peter D. Keisler, Assistant Attorney General, with him on the brief) Civil Division, Department of Justice, Washington, D.C., for Amicus Curiae United States in 05–3013.

Mac D. Finlayson, Morrel, West, Saffa, Craige & Hicks, Inc., Tulsa, OK, on the

brief for Amicus Curiae United Student Aid Funds, Inc. in 05–3013.

Lynn D. Lauver, Attorney at Law, Topeka, KS, on the brief for Appellant in 05–3024.

Daniel Fisher, Educational Credit Management Corporation, St. Paul, Minnesota, Scott M. Browning and Craig R. Welling, Rothgerber Johnson & Lyons LLP, Denver, CO, on the brief for Appellee in 05–3024.

TYMKOVICH, Circuit Judge.

## I. Introduction

These appeals ask us to reconsider our Circuit's precedent concerning the discharge in bankruptcy of student loan debts. Under the Bankruptcy Code, student loans are non-dischargeable unless the student-debtor proves that continued payment is an "undue hardship." 11 U.S.C. § 523(a)(8). Since 1999, we have allowed students to establish undue hardship simply by submitting language in a proposed Chapter 13 plan, which, if unobjected to by a creditor and approved by the court, is later uncontestable. *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253 (10th Cir.1999). This practice is known as "discharge-by-declaration" because the debtor is not required to prove undue hardship in an adversary proceeding as required by Federal Rule of Bankruptcy Procedure 7001(6).

Since our holding in *Andersen*, only one other circuit has followed our lead. *See Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083 (9th Cir.

1999). And, a panel of this Court in 2004 retreated from a broad reading of *Andersen* in a case limiting discharge-by-declaration to cases involving explicit hardship language in the confirmation plan. *Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*, 382 F.3d 1185 (10th Cir.2004). In *Poland*, the panel concluded that, while binding precedent, *Andersen* was "wrongly decided and should be reconsidered." *Id.* at 1189 n. 2. We accept that invitation today.

Here, Educational Credit Management Corporation, along with the United States Government as a friend-of-the-court, argues that discharge-by-declaration violates due process and should not be entitled to the benefit of res judicata. Debtors Patti Jan Mersmann and Connie Ann Seiwert ask us to reaffirm *Andersen*. A panel of this Court considered the arguments in these two cases on January 16, 2007. After reviewing the merits, the panel recommended that the Court revisit its holding in *Andersen*. Accordingly, the panel sua sponte called for a poll of the full court to consolidate these two cases and to consider the cases en banc. The participating members of this Court unanimously voted to consolidate these cases and grant an initial en banc review.

Because we find that the discharge of student loans without an adversary proceeding violates the Bankruptcy Code and Rules and is not entitled to res judicata effect, we now overrule *Andersen*. We also apply our decision prospectively only, so today's holding has no effect on these consolidated appeals. We therefore AFFIRM the Bankruptcy Appellate Panel's orders in *Mersmann* and *Seiwert*.

## II. Background

These two appeals have slightly different factual and procedural backgrounds.

## A. Mersmann

Patti Jan Mersmann, a resident of Kansas, obtained a student loan initially issued by Union Financial Services–1, Inc. c/o UNIPAC Service Corporation and Norwest Bank. On July 15, 1998, Mersmann filed a voluntary petition for bankruptcy under Chapter 13. Union Financial filed a proof of claim on August 3, 1998 and then transferred the loan to a guaranty agency, National Student Loan Program (NSLP), on October 5, 1998. NSLP then provided notice of the assignment of the loan to Educational Credit Management Corporation (ECMC) on January 16, 2001.[1] ECMC is a private, non-profit guaranty agency under the Higher Education Act, 20 U.S.C. § 1071, which guarantees private lender loans to student borrowers who attend eligible institutions of higher education. ECMC, thus, provides guarantor services for student loans against default and, in turn, is reinsured by the United States Department of Education. *See* 20 U.S.C. §§ 1085(j) and 1078(c).

Mersmann submitted a confirmation plan that called for a partial repayment of the student loan and a discharge of the debt at the end of the plan with her petition. The plan specifically stated, "Note— 10% of all general, unsecured creditors are to be paid through plan. Upon completion of plan and payment of said 10% of general, unsecured creditors, all remaining unsecured debts, including school loans that are non-dischargeable in chapter 7 cases, shall be discharged." Mersmann Aplt. App. Vol. I at 49. At the time, Mersmann maintained a balance of $12,569 on her student loan. ECMC received notice of the plan, but did not lodge any objection. The bankruptcy court issued an order confirming the plan on December 9, 1998.

A few months later, on February 19, 1999, Mersmann sought to amend the plan to include the following language,

(1) School loans that are non-dischargeable in chapter 7 cases—to be treated as general unsecured creditors and as follows: 10% of all allowed general, unsecured creditors are to be paid through plan, after payment of allowed secured creditors. Upon completion of planned payment of said 10% of allowed general, unsecured creditors, all remaining unsecured debts, including school loans that are otherwise non-dischargeable in chapter 7 cases, shall be discharged. Said completion of the plan shall result in a finding that it would be an undue hardship for the Debtor to have to pay any additional monies to the special class of school loans not otherwise dischargeable.

*Id.* at 58. Such language would constitute a discharge-by-declaration upon confirmation.

Again, ECMC received notice of the amendment, but failed to object. The bankruptcy court granted the amendment on May 25, 1999. Four years later, Mersmann completed the plan and the bankruptcy court discharged Mersmann's existing debts pursuant to the plan on June 2, 2003. Despite the plan's terms, the discharge order specially excepted from discharge "a student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8) in any case in which discharge is granted." *Id.* at 76.

Following her discharge, ECMC attempted to collect the remaining balance on Mersmann's student loan. She asserted that her student loan had been discharged through her plan under 11

1. For the sake of simplicity, ECMC and all its predecessors-in-interest are referred to as "ECMC."

U.S.C. § 1327. On September 15, 2003, ECMC filed a Rule 60b(4) [2] and (6) [3] of the Federal Rules of Civil Procedure motion to vacate the bankruptcy court's discharge order claiming that it violated due process because the hardship determination was obtained without adequate notice and an adversary proceeding. Mersmann opposed the motion and cross-moved to amend the discharge order under Rule 60(a) [4] to recognize the discharge of her student loans.

In a single opinion consolidating four similarly-situated debtors, the bankruptcy court found for Mersmann, denied the 60(b) motions, and amended the discharge order to excise the language excluding student loans.[5] *See Educ. Credit Mgmt. Corp. v. Boyer (In re Boyer)*, 305 B.R. 42, 50 (Bankr.D.Kan.2004). ECMC appealed the decision to the bankruptcy appellate panel (BAP), which affirmed the lower court order. *See Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann)*, 318 B.R. 537 (B.A.P. 10th Cir.2004). Both the bankruptcy court and the BAP upheld the discharge based on our holding in *Andersen*. ECMC appeals these rulings, asking us to reconsider *Andersen* on due process grounds. The United States has joined ECMC as an amicus based on its position as a direct lender and guarantor of student loans. The United States urges us to overturn *Andersen* on statutory grounds, without taking a position on the due process issue.

## B. Seiwert

Connie A. Seiwert received student loans from the Nebraska Student Loan Program c/o UNIPAC Service Corporation and Windham Professionals (NebSLP). After encountering personal financial difficulties, Seiwert filed for bankruptcy on December 19, 1996. Seiwert's plan included her student loan for the amount of $22,000. NebSLP filed a proof of claim with a principal balance of $26,259, plus interest of $2,769, for a total of $29,028. Seiwert's trustee objected to NebSLP's proof of claim and the bankruptcy court entered an order dividing the claims into (1) a special class of unsecured claim (student loans) for $22,000 and (2) a general unsecured claim for $7,028.

As a part of her Chapter 13 proceedings, Seiwert submitted a confirmation plan to the bankruptcy court that provided,

> Student Loan creditors will be paid the remaining unpaid original principal amount [of $22,000].... During the pendency of the Bankruptcy Proceeding, no interest or penalties will accrue on these debts or claims. All such debts other than the remaining unpaid original principal amount of the loans remaining unpaid upon completion of the plan will be discharged upon entry of any discharge hereunder.

Seiwert Aplt.App. at 35. Through this provision, while agreeing to pay the loan balance of $22,000, Seiwert sought to discharge any pre-petition interest, as well as any post-petition interest or penalties that

---

**2.** A motion to vacate a judgment because the "judgment is void." Fed.R.Civ.P. 60(b)(4).

**3.** A motion to vacate a judgment for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6).

**4.** A motion to correct "[c]lerical mistakes in judgments, orders, or other parts of the record." Fed.R.Civ.P. 60(a).

**5.** The bankruptcy court's 60(a) ruling is not at issue in this appeal. The lower court found that the clerk of the bankruptcy court automatically generates the discharge orders and simply failed to tailor it to the facts of Mersmann's case. Such an error is within the purview of Rule 60(a) motions to amend.

accrued on that debt during the Chapter 13 proceedings. NebSPL received notice of the plan but did not object to confirmation of the plan. The plan was orally confirmed on February 25, 1997 and an order to the same effect was filed on March 10, 1997.

On January 11, 2001, ECMC obtained Seiwert's loan from her lender as a result of her filing for bankruptcy. After making payments for several years, Seiwert successfully paid off her debts under the terms of the plan, including payments to NebSLP/ECMC totaling $22,000. On March 28, 2002, the bankruptcy court entered an order granting Seiwert a discharge pursuant to 11 U.S.C. § 1328(a). The discharge order also excepted from discharge debts "[f]or a student loan or educational benefit overpayment as specified in 11 U.S.C. Section 523(a)(8) in any case in which discharge is granted." *Id.* at 50. The court entered a final decree on July 2, 2002 and Seiwert's Chapter 13 case was closed.

In 2003, ECMC attempted to collect amounts on Seiwert's student loan it claimed were still owing, including over $7,000 in unpaid principal and interest. In response, on April 21, 2003, Seiwert filed a motion in the bankruptcy court seeking to hold ECMC in contempt for seeking payment of a discharged loan subject to a final decree. ECMC contested the motion, arguing that Seiwert's discharge of her student loans was void because she never commenced an adversary proceeding to determine that continued payment of her student loan constitutes an undue hardship, as required by the Bankruptcy Code.

In the consolidated case with Mersmann's and two others, again relying on *Andersen*, the bankruptcy court determined that Seiwert's discharge was valid

as to the remaining interest on the student loan but concluded the unpaid principal was not discharged because the confirmed plan only discharged up to $22,000 of the principal under its terms. On appeal, the BAP reversed the ruling pertaining to the interest based on *Poland*, a decision issued after the bankruptcy court's order. In *Poland*, a panel of this Court held that *Andersen* required a confirmation plan or discharge order to contain an *express finding* of "undue hardship" to discharge a student loan. Since Seiwert's Chapter 13 plan contained no finding of undue hardship, the BAP concluded that Seiwert's final decree did not discharge the unpaid interest she still owed on her student loan. BAP Decision, Aplt. Br. at 15.[6] Seiwert appeals the BAP's order contending that *Poland*'s decision conflicts with *Andersen*'s broad language of finality and that the discharge of the interest owed on her student loan should be recognized.

### III. Analysis

■ On appeal from BAP decisions, we independently review the bankruptcy court's decision. *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commer. Fin. Servs.)*, 427 F.3d 804, 810 (10th Cir.2005). In these appeals, the only disputes are matters of law, which we review de novo. *See id.*

### A. Legal Framework

### 1. Statutory Background

Government-backed student loans originated from the government's policy of promoting access to educational opportunities. 4 Collier on Bankruptcy ¶ 523.14[1] (15th ed. rev.2006). Federally-sponsored student loans began with the National Defense Education Act of 1958, Pub.L. No.

---

**6.** Seiwert does not appeal the portion of the order relating to unpaid principal amounts.

85–864, Title II, §§ 201–09, 72 Stat. 1580, 1583–87 (1958) (establishing the currently-named Perkins Loan program), and the Higher Education Act of 1965, Pub.L. No. 89–329, 79 Stat. 1219 (1965) (establishing the currently-named Stafford Loan program), which provide federal funds for low-interest loans to students to attend eligible institutions of higher education. Under the programs, the federal government insures or guarantees lenders and guarantors that the government will repay student loans in the event of a borrower's default. Collier, *supra*, ¶ 523.14[1].[7] Without this guarantee, Congress feared "most lenders would otherwise refuse to fund a student's pursuit of higher education." Seth J. Gerson, *Separate Classification of Student Loans in Chapter 13*, 73 Wash. U.L.Q. 269, 280 (1995) (providing a thorough history of student loan debts in bankruptcy).

■ Over time, Congress looked increasingly with disfavor on the discharge of student loans in bankruptcy and has progressively foreclosed its availability. The presumption of non-dischargeability of student loans reflects the view that student loans are "enabling loans" allowing individuals to improve their own human capital and increase their income potential, but the fruits of the student loans (i.e., the education) cannot be "seiz[ed], garnish[ed], or repossess[ed]" in case of default. Kevin C. Driscoll Jr., *Eradicating the "Discharge by Declaration" for Student Loan Debt in Chapter 13*, 2000 U. Ill. L.Rev. 1311, 1315–16 (2000).

■ Limitations on the discharge ability of student loans serve two purposes: (1) "preventing abuses of the educational loan system by restricting the ability to discharge a student loan shortly after a student's graduation," and (2) "safeguarding the financial integrity of governmental entities and nonprofit institutions that participate in educational loan programs." Collier, *supra*, ¶ 523.14[1]; *see also Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1306 (10th Cir.2004).

Since before 1978, when the then-governing Bankruptcy Act permitted student loans to be discharged, the requirements for student loan discharge have become progressively more restrictive. In 1978, Congress enacted the Bankruptcy Code making student loans nondischarge able in Chapter 7 cases for the first five-years of repayment unless it would constitute an "undue hardship." Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 523(a)(8), 92 Stat. 2549, 2591 (1978). In 1990, the waiting period was extended to seven years. Federal Debt Collection Procedures Act of 1990, Pub.L. No. 101–647, § 3621(2), 104 Stat. 4933, 4965 (1990). Also in 1990, Congress added these restrictions on student loan discharge to bankruptcy cases filed under Chapter 13. Student Loan Default Prevention Initiative Act of 1990, Pub.L. No. 101–508, § 3007, 104 Stat. 1388, 1388–28 (1990).

■ In 1998, Congress amended § 523 of the Bankruptcy Code to its current form, eliminating the option for student loan discharge after seven years. Higher Education Amendments of 1998, Pub.L. No. 105–244, Title IX, § 971(a), 112 Stat. 1581, 1837 (1998).[8] Accordingly, now student loans may not be discharged in Chapter 7 or 13 cases, except for the *one* nar-

---

7. When a student loan lender notifies a guaranty agency of a borrower's default or petition for bankruptcy, the guaranty agency acquires the claim. 34 C.F.R. §§ 682.406(a)(5) and 682.402(f)(5). Upon receiving notice of a loan default, the government reimburses the guaranty agency. *Id.*

8. Subsequent amendments to § 523 do not affect the "undue hardship" requirement.

row circumstance when "excepting such debt from discharge ... would impose an *undue hardship* on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8) (emphasis supplied).

■■■■ *Undue Hardship.* To prove "undue hardship," the debtor must establish three elements: (1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) the debtor has made good faith efforts to repay the loans. *Polleys*, 356 F.3d at 1307 (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). The burden of demonstrating "undue hardship" falls on the debtor. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir. 1995).

■■■■ Under the Bankruptcy Rules, the debtor must prove the elements of "undue hardship" in an adversary proceeding. Fed. R. Bankr.P. 7001(6) (defining a "proceeding to determine the dischargeability of a debt" as an adversary proceeding). An adversary proceeding is a subpart of a bankruptcy case that has all the trappings of civil litigation. Like a civil trial, adversary proceedings (1) are governed by discovery rules, *id.* R. 7026, (2) can be adjudicated by summary judgment, *id.* R. 7056, (3) are subject to the award of costs, *id.* R. 7054(b), and (4) are appealable, *id.* R. 8001(a).

■■■ Furthermore, and more significantly for this case, the notice requirements to initiate an adversary proceeding are more exacting than the notice required for confirmation of a Chapter 13 plan. The Bankruptcy Rules demand heightened, individualized service of process for adversary proceedings, while they only dictate generalized notice for confirmation of a plan.

■■■■ *Plan Confirmation.* To confirm a plan, notice need only be sent by mail to all "parties in interest" not less than twenty-five days of the time for filing objections and the hearing to consider confirmation of the plan. *Id.* R.2002(b). The notice goes only to the creditor's address provided by the debtor's list of creditors or schedule of liabilities, unless the creditor designates an address. *Id.* R 2002(g)(2). Rule 2002(b) notice regarding Chapter 13 plans, moreover, need only include a *summary* of the plan, not the actual plan. *Id.* R. 3015(d). Accordingly, Rule 2002 does not require specific notice of a plan provision's effect on a particular creditor, nor does it require notice to be served in any particular manner or upon any particular person.

■■■■ *Adversary Proceeding.* To initiate an adversary proceeding, a debtor must fulfill the highly specific service of process requirements. *Id.* R. 7001(6). First, the debtor must file a complaint, which must be served alongside a summons on the creditor-defendant. *Id.* R. 7003 and 7004. Where the creditor is a corporation, service of the complaint requires a summons delivered upon "an officer, a managing or general agent, or to any agent authorized by appointment or by law to receive service of process." *Id.* R. 7004(b)(3). The obligation to answer the adversary proceeding complaint is not triggered until the complaint is "duly served." *Id.* R. 7012(a). Once duly served, the creditor-defendant has thirty days to file its answer and thirty-five days if the creditor is the United States. *Id.* Without proper service, the defendant cannot be said to have "failed to plead or otherwise defend as provided by these

rules." Fed.R.Civ.P. 55(a), incorporated by Fed. R. Bankr.P. 7055.

### 2. Tenth Circuit Precedent

The central question in these appeals is whether discharge-by-declaration satisfies the highly specific requirements and safeguards of an adversary proceeding to accord it respect under the principles of res judicata and to withstand the demands of due process. Our case law suggests conflicting answers.

### a. In re Andersen

We first confronted this question in *Andersen*, 179 F.3d at 1253. In *Andersen*, the debtor presented a plan that called for repayment of ten percent on her student loans with the remaining ninety percent to be discharged upon successful completion of the plan. *Id.* at 1254. The debtor failed to initiate an adversary hearing as mandated by the Bankruptcy Code and Rules to prove "undue hardship." *Id.* at 1255. Instead, the debtor submitted language into her confirmation plan stating, "[p]ursuant to 11 U.S.C. § 523(a)(8), excepting . . . education loans from discharge will impose an undue hardship on the debtor and the debtor's dependents. Confirmation of debtor's plan shall constitute a finding to that effect and that said debt is dischargeable." *Id.* at 1254. An untimely objection was made by the student-loan creditor and subsequently denied by the bankruptcy court. The court confirmed the plan, the debtor successfully completed her payments under the plan, and the court granted her a discharge.

When the creditor attempted to collect on the student loan post-discharge, the debtor reopened the case in bankruptcy court, which ruled in favor of the creditor. The court found that the discharge-by-declaration language in the plan did not "constitute a judicial determination of

hardship" because the "creditors were entitled to a higher level of due process before the confirmation of the plan invokes the concept of res judicata." *Id.* at 1255. On appeal, the BAP reversed the bankruptcy court holding that the discharge order properly discharged the student loan obligation. *Id.*

On appeal, the panel in *Andersen* stressed the importance of a creditor's obligation to protect its own interests and not "simply sit on its rights." *Id.* at 1256. More importantly, *Andersen* held that, despite the failure to comply with the Bankruptcy Code's requirements, the order of confirmation discharging the student loan debt was nonetheless final and entitled to res judicata effect. The panel found that the "strong policy of finality" outweighed the plan's failure to conform with the statutory provisions of the Bankruptcy Code requiring an adversary proceeding. *Id.* at 1258. According to the panel, the confirmation of a Chapter 13 plan represents a binding determination of the rights and liabilities of the parties with notice of the proposed confirmation plan and that it is "res judicata as to the issue of hardship." *Id.* at 1259. The panel reasoned, "[t]o permit [the creditor] to prevail at this late stage, subsequent to the order of discharge and several years after the plan was confirmed, would not only diminish the reliability and finality of the confirmed plan, but would surely disrupt [the debtor's] reasonable and settled expectations regarding her future financial planning." *Id.* at 1259. The panel accordingly affirmed the BAP's decision.

In a footnote, the *Andersen* panel also found that discharge-by-declaration does not raise due process concerns since the creditor in the case did not complain of inadequate notice. *Id.* at 1257 n. 6. The panel noted, "we do not perceive a due process issue here. Rather . . . given the

fact that [the creditor] does not complain that it lacked adequate notice of [the debtor's] plan prior to confirmation, it appears that due process has been accorded." *Id.* (internal quotes omitted).[9]

### b. In re Poland

A few years later, in *Poland*, we examined the scope of *Andersen* in circumstances where the confirmation plan and discharge order *did not* contain express findings of undue hardship. *See generally Poland*, 382 F.3d at 1185. Contrary to *Andersen*, neither the debtor's confirmation plan nor the confirmation order in *Poland* asked the bankruptcy court to make any finding of undue hardship pursuant to 11 U.S.C § 532(a)(8). Accordingly, since the plan and confirmation order did not "contain any type of finding of undue hardship," we concluded that "*Andersen* does not apply." *Id.* at 1189.

*Poland* thus strictly limited *Andersen* to situations where a finding of undue hardship is *expressly* included in the confirmed plan or confirmation order. *Id.* at 1188. While recognizing the res judicata effect of a confirmation order following circumstances in *Andersen*, the *Poland* panel went on "to emphasize, as we did in *Andersen*, that the proper way to discharge a student loan debt is through an adversary proceeding where the debtor establishes undue hardship." *Id.* at 1189.

More significantly, the panel in *Poland* candidly observed that *Andersen*, while binding precedent, was "wrongly decided and should be reconsidered." *Id.* at 1189 n. 2. In its view,

> The unfortunate result of *Andersen* is that astute attorneys now insert student loan discharge language ... into Chapter 13 plans hoping to achieve preclusive effect, notwithstanding: (1) Bankruptcy Code § 528(a)(8) explicitly precludes the discharge of a debtor's student loan absent a showing of undue hardship, (2) Bankruptcy Rules specifically require a successful adversary proceeding, complete with individualized service of process, to establish undue hardship and discharge a student loan, and (3) lack of required notice under the Bankruptcy Rules proscribes preclusive effect.

*Id.*

Other courts within our jurisdiction have similarly refused to accept a broad reading of *Andersen*. *See, e.g., In re Lemons*, 285 B.R. 327, 331 (Bankr.W.D.Okla.2002) ("This Court agrees with the numerous courts that characterize *Andersen* as a res judicata case, and further agrees ... that the *Andersen* court failed to address the due process requirement."); *In re Boyer*, 305 B.R. 42, 52 (Bankr.D.Kan.2004) (holding that discharge-by-declaration violates due process but *Andersen* is binding in the Tenth Circuit).

### 3. Other Authorities

Our holding in *Andersen* has also generated considerable opposition and only one court has followed our lead in permitting discharge-by-declaration. *See In re Pardee*, 193 F.3d 1083, 1087 (9th Cir.1999).[10]

---

**9.** ECMC argues that *Andersen* was solely a res judicata case and did not reach the due process issue. Because we reverse *Andersen*, we need not reach this issue here.

**10.** Similar to the reaction in this Circuit, the Ninth Circuit's decision has generated some intra-circuit criticism. *See, e.g., Educ. Credit Mgmt. Corp. v. Repp (In re Repp)*, 307 B.R. 144 (B.A.P. 9th Cir.2004) (finding *Pardee* ignored due process and discharge-by-declaration violates due process). Furthermore, in the context of another bankruptcy matter, the Ninth Circuit called into question the rationale employed by *Pardee*, undermining its continued validity. *See Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir.2004) (finding that a "confirmed plan has no preclusive effect on issues

Since then, numerous circuits and academic commentators have concluded that discharge without an adversary proceeding raises serious due process concerns or does not deserve the preclusive effect of res judicata.[11] We briefly review the court authorities.

The Fourth, Sixth and Seventh Circuits have ruled against the concept of discharge-by-declaration on due process grounds. *See Banks v. Sallie Mae Servicing Corp. (In re Banks),* 299 F.3d 296 (4th Cir.2002); *Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle),* 412 F.3d 679 (6th Cir.2005); *In re Hanson,* 397 F.3d 482 (7th Cir.2005).

In *Banks,* the Fourth Circuit recognized that although a confirmation order is generally afforded preclusive effect, "we cannot defer to such an order if it would result in a denial of due process." 299 F.3d at 302 (Baldock, J., sitting by designation). The court noted that the simple "notice" a creditor receives under Rule 2002 falls far short of the procedural safeguards and heightened service of process requirements of an adversary proceeding guaranteed by Rules 7001, 7003, 7004, and 7012. *See id.* at 301. "Where the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order," the court declared, "due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect." *Id.* at 302.

Following the Fourth Circuit's lead, the Seventh Circuit also rejected discharge-by-declaration on due process grounds in *Hanson,* 397 F.3d at 482. The court embraced the analysis of *Banks* and *Poland,* finding the cases to hold "greater persuasive force because they are consistent with Congress' unmistakable intent to make student loan debt nondischargeable absent a showing of undue hardship." *Id.* at 486. The court concluded that *Andersen* and *Pardee* allowed debtors "to flout both substantive and procedural provisions of the Bankruptcy Code and Rules through a meaningless incantation of undue hardship in their proposed plans." *Id.* While respecting the strong policy favoring finality of confirmation orders, "the dictates of due process trump policy arguments about finality." *Id.*

The Sixth Circuit came to the same conclusion in *Ruehle.* 412 F.3d at 679. The court strongly objected to discharge-by-declaration, finding it "embodies many of the dangers inherent in winking at due process, which is the cornerstone of justice." *Id.* at 684.

First, it ignores the clear intent of Congress and the Judicial Conference in favor of individual judicial legislation. Congress, in the Code, and the Judicial Conference, in the rules, require an adversary proceeding. Second, it enriches and emboldens those who take what is not theirs and legitimizes it with court sanction. Those who push past the edge

---

that must be brought by an adversary proceeding").

**11.** *See, e.g.,* Kevin C. Driscoll Jr., *Eradicating the "Discharge by Declaration" for Student Loan Debt in Chapter 13,* 2000 U. Ill. L.Rev. 1311 (2000) (discharge-by-declaration is not entitled to res judicata and violates due process); Keith C. Owens, *The Perils of Plan Confirmation: Speak Now or Forever Hold Your Peace,* 23–8 Am. Bankr.Inst. J. 12 (2004) (finding that discharge-by-declaration fails to

satisfy due process); Craig Gargotta, *Should Chapter 13 Plans Discharge Student Loans?,* 24–2 Am. Bankr.Inst. J. 8 (2005) (attacking the res judicata basis for discharge-by-declaration). *But see,* Farris E. Ain, *Never Judge a Bankruptcy Plan by its Cover: The Discharge of Student Loans Through Provisions in a Chapter 13 Plan,* 32 Sw. U.L.Rev. 703 (2003) (supporting discharge-by-declaration based on the need for finality).

of propriety in fundamental rights are rewarded.

*Id.*

Finally, the Second Circuit proscribed discharge-by-declaration on narrow statutory and res judicata grounds. In *Whelton v. Educ. Credit Mgmt. Corp.*, the court concluded, "although confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." 432 F.3d 150, 154 (2d Cir.2005) (citing *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir.2004)). Accordingly, the court held that the bankruptcy court lacked the authority under 11 U.S.C. § 1328(a) to grant a discharge of the debtor's student loan debt.

The *Whelton* court recognized res judicata is properly invoked only where there is (1) an adjudication on the merits, (2) privity of parties, and (3) the matter involved claims that were or could have been raised in the previous action. *Id.* at 155. First, discharge-by-declaration fell short of these requirements because the debtor's failure to comply with the notice requirements of the Code and Rules precluded the claim from being properly raised in the previous action. *Id.* Second, since none of the elements of "undue hardship" were pleaded or proven by the debtor, nor found by the bankruptcy court in discharging the debt, the "undue hardship" showing was not adjudicated on the merits. *Id.* Such elements could not be established in a summary proceeding. *Id.*

In conclusion, the *Whelton* court held, "[b]ecause the [debtor] failed to serve [the creditor] and affirmatively establish such undue hardship in an adversary proceeding, his liability on the loan survives the purported discharge." *Id.* at 156.

We find this line of analysis persuasive and now adopt it.

## B. Overturning Andersen

■ ECMC and the United States, as amicus, ask us to limit or overturn *Andersen* on (1) due process grounds as articulated in *Banks*, *Ruehle*, and *Hanson*, or (2) statutory and res judicata grounds, as set forth to *Whelton*. While *Andersen*'s conclusion that due process was satisfied has been cast into considerable doubt by subsequent cases, since we find the statutory and res judicata arguments dispositive, we need not revisit the due process question in this opinion.

We thus turn to the statutory and res judicata arguments.

### 1. Statutory Grounds

■ Under the Bankruptcy Code, "a confirmed plan bind[s] the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). This provision serves the same purpose as the general doctrine of res judicata. 8 Collier, *supra*, ¶ 1327.02[1]. "There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order." *Id.* As there are limits to res judicata, there are also limits to § 1327(a)'s broad language of finality. Discharge-by-declaration deserves no preclusive effect under § 1327(a) because it fails to comport with the provisions of the Bankruptcy Code and Rules governing discharge.

■ Several good reasons support this conclusion. *First,* through § 523(a)(8), Congress evinced the unmis-

takable intent to make student loan debts "presumptively nondischargeable" and to "singl[e them] out for an individualized adjudication." *Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 450, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) (internal quotes omitted). Section 523(a)(8) requires an individualized determination of "undue hardship":

> A discharge under section ... 1328(b) of this title does not discharge an individual debtor from any debt ... for an educational ... loan made ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor.

11 U.S.C. § 523(a)(8). When a debt is not automatically dischargeable, Bankruptcy Rule 7001(6) commands that the debt must not be discharged without an adversary proceeding.

The Supreme Court has held that § 523(a)(8) is "self-executing" and "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Hood,* 541 U.S. at 450, 124 S.Ct. 1905. Accordingly, Congress specifically requires "a debtor ... [to] establish undue hardship by filing a complaint for an adversarial hearing and serving the creditor with a summons." *Ruehle,* 412 F.3d at 681. Simply embedding a "meaningless incantation of undue hardship" in a confirmation plan falls short of the "affirmative" action required by Congress and the Supreme Court. *Hanson,* 397 F.3d at 486. As *Whelton* recognized, the procedure is tantamount to "practice by ambush, hardly consistent with the Bankruptcy Court's duty to serve equity." 432 F.3d at 153 (internal quotation omitted).

■ *Second,* applying § 1327(a)'s preclusive effect to discharge-by-declaration conflicts with other specific provisions of the Code. Section 1328(a)(2), for example,

states that "as soon as practicable after completion by the debtor of all payments under the plan, ... the [bankruptcy] court shall grant the debtor a discharge of all debts provided for by the plan ..., except any debt ... of the kind specified in ... paragraph ... (8) ... of section 523(a)." Section 523(a)(8) is, of course, the provision making student loan debts presumptively nondischargeable and § 1328(a)(2) applies the provision to Chapter 13 cases. Giving preclusive effect to a discharge-by-declaration through § 1327(a) renders part of § 1328(a)(2) nugatory. "When general and specific statutory provisions apparently contradict, it is well-established that the two may exist together, the specific provision qualifying or limiting the general." *United States v. Shewmaker,* 936 F.2d 1124, 1128 (10th Cir.1991). Thus, § 1328(a)(2)'s specific pronouncement must be read as limiting § 1327(a)'s broad res judicata effect.

■ *Third,* § 1325(a)(1) of Code permits the confirmation of a plan *only* if it is consistent with the rest of the Code. "Courts shall confirm a plan if ... the plan complies with the provisions of this chapter [11 U.S.C. §§ 1301 et seq.]." 11 U.S.C. § 1325(a)(1). Discharge-by-declaration does not do so.

For these reasons, discharge-by-declaration violates the general maxim that the Bankruptcy Code and Rules "be construed so that their provisions are harmonious with each other." *Turner v. SBA (In re Turner),* 84 F.3d 1294, 1298 (10th Cir. 1996). Since discharge-by-declaration does not comport with a number of provisions of the Bankruptcy Code and Rules, it is undeserving of res judicata effect. To give preclusive effect to a confirmation order based solely on § 1327(a) deprives the Bankruptcy Code and Rules of a coherent reading, fails to give full effect to

all of their provisions, and undermines the clear will of Congress.

Accordingly, we conclude that a bankruptcy court lacks authority to confirm a plan provision that seeks to discharge a student loan debt without an adversary proceeding proving "undue hardship." [12]

### 2. Res Judicata Grounds

In addition to the statutory basis for overruling *Andersen*, res judicata analysis also supports this conclusion.

 Res judicata requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party must have had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. Gen. Mills Rests., Inc.,* 124 F.3d 1255, 1257 (10th Cir.1997).

 Discharge-by-declaration fails several of these requirements. First of all, proper notice is the linchpin of a party's "full and fair opportunity to litigate" a claim. Res judicata will not apply where there is inadequate notice. Simply put, the failure to sufficiently apprise a creditor of a pending action which could eliminate the creditor's interest is a "deficiency that would undermine the fundamental fairness of the original proceedings." *Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329, 1334 (10th Cir.

1988) (articulating the standard for a "full and fair opportunity to litigate"). As we explained above, Congress has specified that a debtor must initiate an adversary proceeding, complete with individualized service of process, to establish "undue hardship" for the discharge of student loan debts. After all, "[t]he creditor has a right to assume that he will receive all of the notices *required by statute* before his claim is forever barred." , *Reliable Electric Co. v. Olson Constr. Co.,* 726 F.2d 620, 622 (10th Cir.1984) (internal quotation omitted and emphasis added); *see also New York v. New York, N.H. & H. R.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 97 L.Ed. 333 (1953) ("[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred.").

It is true that a line of cases holds that confirmed plans deserve res judicata effect notwithstanding conflicts with the Bankruptcy Code or Rules. Our decision in *Andersen* relied heavily on this principle. *See Andersen,* 179 F.3d at 1258 ("While Andersen did not properly prove undue hardship pursuant to the requirements of the Code, ... 'after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligation to verify a plan's compliance with the Code.' ") (citing *In re Szostek,* 886 F.2d 1405, 1406

---

**12.** This conclusion is consistent with another one of our recent student loan cases. We have previously held that a bankruptcy court may not grant a "partial" discharge of a student loan debt pursuant to its 11 U.S.C. § 105(a) equitable powers if the court determines that the debtors fail to satisfy § 523(a)(8)'s "undue hardship" determination in an adversary proceeding. *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete),* 412 F.3d 1200, 1206–07 (10th Cir.2005). "To allow the bankruptcy court, through principles of equi-

ty, to grant any more or less than what the clear language of § 523(a)(8) mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts." *Id.* at 1207 (internal quotation omitted). It would be incongruous to prohibit a *partial* discharge of a student loan debt to a debtor who followed all the Rules and obtained an adversary proceeding and lost, but to allow a *full* discharge to a debtor who chose to the ignore the Rules yet still gained an undue hardship finding.

(3d Cir.1989)). But the principles of res judicata must yield where the failure to follow the Code and Rules goes to the heart of the creditor's notice of the bankruptcy plan itself.

 Discharge-by-declaration also fails the first element of res judicata—whether the claim was "adjudicated on the merits." Res judicata only bars a collateral attack on claims that were "actually litigated and those that were or could have been raised in the first action." *Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir.1990).

We thus agree with those courts that conclude bankruptcy matters requiring an adversary proceeding do not meet these requirements. *See, e.g., Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir.1995) (concluding that "confirmation of a Chapter 13 plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters, confirmation generally cannot have preclusive effect as to [matters], which must be resolved in an adversary proceeding."); *Whelton*, 432 F.3d at 155 ("[B]y including a discharge by declaration provision, the debtor has avoided the statutorily required adjudication on the merits which is also necessary for the application of res judicata."); *Enewally*, 368 F.3d at 1173 ("[A] confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding.").

 In short, if an issue must be raised through an adversary proceeding it will not have a preclusive effect unless it is actually litigated.[13]

### 3. Other Considerations

Denying preclusive effect to a discharge-by-declaration also furthers other goals of the bankruptcy system. *First*, bankruptcy attorneys are freed from the ethical conundrum of deciding between (1) zealous advocacy on behalf of their clients and (2) the requirement that they only present good faith, non-frivolous issues. Bankruptcy attorneys may be caught on the horns of a dilemma between aggressively pursuing a discharge-by-declaration on behalf of clients and ensuring that their clients meet the elements of an "undue hardship" in good faith. *See, e.g.,* Driscoll, *supra*, at 1332–1334; Ain, *supra* note 12, at 718–19.

*Second*, prohibiting discharge-by-declaration in these circumstances rightfully places the burden of pleading and proving the elements of "undue hardship" on the debtor. Considering the myriad actors and procedures involved in the guarantee, insurance, and re-insurance of student loan

---

**13.** Discharge-by-declaration also fails to plead or prove actual hardship. To establish "undue hardship," we require the debtor to show: (1) the maintenance of a certain standard of living for the debtor and dependents; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for the payment period; and (3) that the debtor has made good faith efforts to repay the loans. *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1307 (10th Cir.2004). In order to decide whether "additional circumstances" exist under the second prong, "a realistic look must be made into [the] debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like." *Id.* at 1310. We further noted that "courts should base their estimation of a debt-or's prospects on specific articulable facts, not unfounded optimism." *Id.* (internal quotation omitted).

Unless the bankruptcy court orders otherwise, the debtor must only file: (1) schedules of assets and liabilities; (2) a schedule of current income and expenditures; (3) a schedule of executory contracts and unexpired leases; and (4) a statement of financial affairs. Fed. R. Bankr.P. 1007(b); 11 U.S.C. § 521. It is difficult to see how bankruptcy courts could find "specific articulable facts" of hardship based solely on the schedules provided to the court with the bankruptcy petition. For an example of these schedules, see Mersmann Aplt.App. Vol. I at 21–49; Seiwert Aplt.App. at 9–33.

debts on the creditors' side, it is logical and cost effective to require debtors to bring the requested discharge to the attention of creditors before creditors are bound by the confirmation plan.

\* \* \*

■ In conclusion, we find that the Bankruptcy Code and Rules and principles of res judicata deny preclusive effect to a confirmation provision permitting the discharge of student loan debts without the benefit of an adversary proceeding to establish "undue hardship." We acknowledge that providing debtors with a "fresh start" is the principle purpose of the Bankruptcy Code, *see Marrama v. Citizens Bank,* —— U.S. ——, 127 S.Ct. 1105, 1115, 166 L.Ed.2d 956 (2007), and finality furthers that goal. Nevertheless, Congress, and not debtors, dictates the scope of a discharge in bankruptcy. Since the Bankruptcy Code and Rules allow for discharge of student loan debts in one—and only one—way, *see* 11 U.S.C. § 523(a)(8); Fed. R. Bankr.P. 7001(6), bankruptcy courts lack the authority to confirm a plan provision calling for the discharge of student loan debt without an adversary proceeding.

Accordingly, *Andersen* is overruled.

## C. Prospectivity

In overruling *Andersen,* we must also decide whether to administer this rule retroactively to Mersmann and all pending cases or apply it prospectively only.

### 1. General Principles

■ We consider several factors in determining whether a current judicial rule in the civil context should be given retroactive effect or whether the previously existing rule should govern. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). These factors

include: (1) whether the more recent rule or decision establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;" (2) whether, given the history, purpose and effect of the new rule, retroactive application of this rule will further or retard its operation; and (3) whether retroactive application of the new rule "could produce substantial inequitable results." *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1494 (10th Cir.1991) (citing *Chevron,* 404 U.S. at 106–07, 92 S.Ct. 349 (internal quotation omitted)).

■ Since *Chevron,* the Court's standard has evolved in many ways, leaving in its wake a confusing path for courts to navigate. *See, e.g., Griffith v. Kentucky,* 479 U.S. 314, 322 n. 8, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *American Trucking Ass'ns., Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *Reynoldsville Casket Co. v. Hyde,* 514 U.S. 749, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995). What we take from these cases is: "[T]he analysis of *Chevron* is only relevant, if it maintains any relevance at all, in determining whether a new federal rule should apply retroactively across the board. No longer may *Chevron* be used to make individual retroactivity determinations on a case by case equitable basis." *Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1547 (10th Cir.1996). Furthermore, whether a federal law is applicable to a particular case does not turn on "whether litigants actually relied on an old rule or how they would suffer from retroactive application of a new one."

*Harper,* 509 U.S. at 95 n. 9, 113 S.Ct. 2510 (internal quotation omitted).

▓▓▓▓▓ Consequently, since our decision today "overrul[es] clear past precedent," we must determine whether to apply the rule retroactively or prospectively. We acknowledge that courts should hesitate to apply new civil rules prospectively only, and the reliance interest of particular litigants is irrelevant. *See Harper,* 509 U.S. at 95 n. 9, 113 S.Ct. 2510. Nonetheless, "the law of bankruptcy is founded upon principles of equity," *Wyoming DOT v. Straight (In re Straight),* 143 F.3d 1387, 1389 (10th Cir.1998), which helps guide us in deciding this issue.

Prospective operation of the rule in this case satisfies the relevant *Chevron* factors. *Andersen* has been the precedent of the Circuit since 1999; hence, all potential debtors and creditors in the Circuit have been on notice of the legality of discharge-by-declaration for nearly eight years. Equity disfavors disturbing the finality of these cases. The purpose of this new rule is to correct a misinterpretation of the Bankruptcy Code and Rules. Revisiting past cases involving discharge-by-declaration does not further that goal, and could lead to the reopening of cases long thought settled.

Accordingly, the *Chevron* factors and general equities of bankruptcy law counsel in favor of a prospective-only application of this new interpretation. Debtors without a confirmed plan as of the publication of this opinion, thus, may not seek a discharge of their student loan debts without first establishing "undue hardship" through an adversary proceeding.

### 2. Application to Mersmann

Since we apply this decision prospectively only, *Andersen* remains the governing law for Mersmann. As the bankruptcy court confirmed a plan with a finding of "undue hardship," the "order of confirmation is res judicata as to the issue of hardship," *Andersen,* 179 F.3d at 1259, and the discharge of her student loan debt was valid.[14]

### 3. Application to Seiwert

In Seiwert's case, no binding determination of hardship exists since she did not include express "undue hardship" language in her confirmation plan as required by *Poland.* Instead, Seiwert argues *Poland* conflicts with *Andersen*'s broad language of finality and was wrongly decided. Since *Andersen* is still good law in Seiwert's appeal, we must decide this question.

Seiwert reasons that ECMC's failure to object to her confirmation plan calling for the discharge of her student loan precludes its collateral attack on the confirmation order. Rather, she argues mere notice of the proposed confirmation plan was enough to satisfy her obligation under *Andersen* since "once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan, are entitled to *res judicata* effect." Seiwert Opening Br. at 8.

We disagree with this assessment. As we recognized in *Poland,* requiring an express finding of undue hardship in a confirmation plan or order strikes a reasonable balance between *Andersen*'s concern for finality and the Bankruptcy Code's ex-

---

**14.** It is worth noting Mersmann sought to insert the undue hardship language into her plan in February 1999—well after the BAP decision approving discharge-by-declaration was filed on January 26, 1998. We affirmed the BAP decision in *Andersen* on June 7, 1999—shortly after the confirmation of her plan, but well before the order discharging her debts.

plicit mandate that student loans be presumptively non-dischargeable. *Andersen* and *Poland* are thus not inconsistent, and, notwithstanding our decision to overturn *Andersen* today, *Poland* governs Seiwert's case. Accordingly, the interest on Seiwert's student loan debt was not discharged.

## IV. Conclusion

For the foregoing reasons, we overrule *Andersen*. Henceforth, a confirmation order's determination of "undue hardship" established without an adversary proceeding, as required by the Bankruptcy Code and Rules, is no longer entitled to preclusive effect. Since we choose to apply this new rule prospectively only, *Andersen* and *Poland* remain the governing law for Mersmann and Seiwert and we AFFIRM the BAP's decisions in these cases.

HARTZ, Circuit Judge, joined by McCONNELL, Circuit Judge, concurring/dissenting:

I join all of Judge Tymkovich's opinion except Section III(C), entitled "Prospectivity." In my view, our decision overruling *Andersen v. UNIPAC-NEBHELP (In re Andersen)*, 179 F.3d 1253 (10th Cir.1999), should be retroactive. I respectfully dissent from my colleagues' contrary view.

In reaching this conclusion I do not need to adopt the view of the concurring opinions by Justices Blackman and Scalia in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 547, 111 S.Ct. 2439, 115 L.Ed.2d 481 (Blackman, J., concurring), 548 (Scalia, J., concurring) (1991), that the Constitution sets limits on prospective overruling. I simply would say that the factors set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), compel retroactivity. *Chevron*'s three factors are (1) whether the decision whose retroactivity is in ques-

tion "establish[ed] a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed," *id.* at 106, 92 S.Ct. 349 (citation omitted); (2) "whether [in light of the history, purpose, and effect of the rule] retrospective operation will further or retard its operation," *id.* at 107, 92 S.Ct. 349; and (3) "the inequity [if any] imposed by retroactive application, [recognizing that] where a decision ... could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity," *id.* (internal quotation marks and brackets omitted).

The first factor (that we are overruling a precedent) is the only one that favors prospectivity, and even then, the weight of the factor is reduced somewhat because the criticism of *Andersen* by other circuits (perhaps portending overruling by the Supreme Court) and by our own opinion in *Poland v. Educational Credit Management Corp. (In re Poland)*, 382 F.3d 1185, 1189 n. 2 (10th Cir.2004), suggests that *Andersen* could be the source of only a *cautious* reliance.

The other two factors support retroactivity. The underlying rationale for our decision in this case is that a creditor should not be deprived of its rights in a bankruptcy proceeding unless it receives proper notice (and then can litigate the issue in an adversary proceeding). Proper notice is fundamental to our conception of fair procedure. To apply our decision purely prospectively is to bless a prior denial of legal rights without a fair procedure. Such application does not advance, but retards, the operation of the legal principle pronounced by today's decision. In our legal tradition we do not turn a blind eye to prior deprivations of fair procedure.

When a person does not receive constitutionally adequate notice of a legal proceeding, the person is not bound by a resulting judgment. *See Orner v. Shalala,* 30 F.3d 1307, 1310 (10th Cir.1994), *see also Foster v. Arletty 3 Sarl,* 278 F.3d 409, 414 (4th Cir.2002). The majority opinion fails to explain why we should not employ the same approach when notice is inadequate under a statute. Indeed, I do not understand how the opinion can refuse to apply our overruling of *Andersen* retroactively without considering whether constitutional due process requires the overruling.

As for the third factor, the majority opinion misconceives the impact of retroactivity. Retroactivity will not cause any massive reopening of old cases. We are concerned solely with cases in which the bankruptcy court has entered an order discharging a student loan. Such an order can be reopened only under Fed.R.Civ.P. 60(b). But a motion to reopen under that rule must "be made within a reasonable time." Fed.R.Civ.P. 60(b); *see Foster,* 278 F.3d at 414. Given the nature of bankruptcy proceedings, a "reasonable time" should be a relatively brief period after the creditor has knowledge or adequate notice of the discharge of the debt. In the Mersmann litigation, for example, ECMC filed its Rule 60(b) motion about three months after the discharge order, and that order actually excepted the student loan from discharge. Although the matter should be addressed by the bankruptcy court in the first instance, it certainly appears that ECMC acted with reasonable promptness. I see no likelihood of "substantial inequitable results" if our opinion were retroactive.